[Civ. No. 9533. First Appellate District, Division One.—May 21, 1935.]

COUNTY OF SAN BENITO, Respondent, v. COPPER MOUNTAIN MINING COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

M. H. Peterson, C. E. Peters and Edward F. Treadwell for Appellants.

A. M. Runnells and Wyckoff, Gardner & Parker for Respondent.

THE COURT.—This is an action by plaintiff to condemn, for a public park, a certain tract of land consisting of 160 acres. The action was commenced on February 1, 1930. The preliminary resolution was adopted January 15, 1929. In the complaint the names of the owners of the land were given as Copper Mountain Mining Company of California; R. L. Handy and W. W. Colquhoun, trustees for California Home Building Loan Company, a corporation; California Home Building Loan Company, a corporation; Olive A. Rivers and A. L. Crawford. Handy, Colquhoun and Crawford filed disclaimers; Olive A. Rivers answered, alleging a leasehold interest in the property. The Copper Mountain Mining Company answered alleging ownership of said land and ownership of certain mining claims in the immediate vicinity of the said land; that the land sought to be condemned was the only source of the only water available for the working of these mining claims; that the value of said land was $1,000,000 and that the damage for severance of said land from the mining claims was $300,000.

On June 22, 1933, in the Southern Division of the United States District Court, in and for the Northern District of California, a stipulated judgment was rendered in favor of the Titanic Copper Mountain Mining Company of Arizona and against the said Copper Mountain Mining Company of California, decreeing the title to all of the land herein sought to be condemned to be in the Titanic company. Thereafter, on June 26, 1933, the same being the date upon which this action was set for trial, the said Titanic corporation presented a motion to be permitted to intervene and answer. This proceeding culminated in an order by the court that the said Titanic Copper Mountain Mining Company be permitted to defend in the name of the Copper Mountain Mining Company of California, and for this purpose that the answer be amended to set forth the defenses pleaded in the answer of the said Titanic company. Thereupon the answer was so amended, served and filed. This amended answer alleged, among other things, that the said Titanic company by virtue of said decree was the owner of the 160 acres sought to be condemned; that the said Copper Mountain Mining Company was the owner of the said mining claims; that the said 160 acres had a market value of $1,000,000 and that the severance

damage to the Copper Mountain Mining Company was the sum of $300,000, and it prayed that the award for value of said land be made to the Titanic company, and that the severance damages be made to the Copper Mountain Mining Company. The trial then proceeded under the amended answer of the said Titanic company.

There is a decided conflict in the testimony as to the value of the land taken. On behalf of defendants there was testimony of value from $100,000 to $1,000,000. On the part of plaintiff the testimony varied from $5,000 to $8,000. An expert appointed by the court put the value at $12,000. The court found that the value of said land sought to be condemned was the sum of $11,875, and that the value of the lease was $1500, the value of said leasehold to be deducted from the gross value, and judgment was entered accordingly. No award for severance damages was made. From this judgment defendants have appealed.

■ Appellants contend that the Titanic company should have been permitted to intervene and answer. We can see no error in the refusal of the trial court to permit this intervention. The Titanic company was permitted to file an amended answer wherein it set forth all of its defenses to the action. It went to trial and produced evidence in support of the matters contained in said amended answer, and the award for the value of the land was made in its favor. Under section 385 of the Code of Civil Procedure, in case of any transfer of interest, other than that caused by the death or disability of a party, the action may be continued in the name of the original party, or the court may allow the person who succeeds to the interest to be substituted in the action, the matter being in the discretion of the court. (*Alameda County Home Inv. Co.* v. *Whitaker*, 217 Cal. 231 [18 Pac. (2d) 662].)

■ Appellants' next contention is that the resolution of the board of supervisors condemning this land for a park was not passed in good faith, but with the intention to make a gift of it to the United States for which there was then no statutory authority. There was, however, statutory authority for the making of this gift shortly after this resolution was passed. The act of the legislature which became a law on August 14, 1929, provided that: "The boards of supervisors of the several counties are hereby authorized and empowered to grant, transfer and convey without consideration any real property or interest therein now owned or that may hereafter be ac-

quired by any county to the United States of America to be used for national park purposes.'' (Stats. 1929, p. 1042.) Section 1238 of the Code of Civil Procedure authorizes the condemnation of lands for public parks, whether such parks shall be under management of the county, state or national government. ██ A national park is as much a public park as any other park. A park is a place of recreation and enjoyment for the public generally. (*Humphreys* v. *San Francisco,* 92 Cal. App. 69, 75 [268 Pac. 388] ; *Archer* v. *Salinas City,* 93 Cal. 43, 50 [28 Pac. 839, 16 L. R. A. 145].) It makes no difference whether it is designed for the use of the people of a town, city, county or state, or for the people of the nation. (*Wilson* v. *Lambert,* 168 U. S. 611 [18 Sup. Ct. 217, 42 L. Ed. 599].)

██ Appellants claim that the court erred in not finding any severance damages. Subdivision 2 of section 1248 of the Code of Civil Procedure provides that if the property sought to be condemned constitutes only a part of a larger parcel the court must assess the damages that will accrue, by reason of its severance, to the portion not sought to be condemned. The uncontradicted evidence is that the land sought to be condemned is entirely surrounded by land owned by the United States, and that it is not a part of a larger parcel from which it is sought to be severed by this condemnation action. The sole claim for severance damages is that the Copper Mountain Mining Company owns some mining claims in the vicinity of the land sought to be condemned, and that for operating its said mines it is necessary to have the use of water that exists and flows over and across the said land sought to be condemned. There is no showing that the said Copper Mountain Mining Company is the owner of, or has acquired any right to the use of this water. The property for which severance damages are claimed is owned by other than the one whose land was sought to be condemned. Appellants cite no authorities to the effect that severance damages may be awarded to one who is not the owner of the land sought to be condemned, and we have found none that uphold this doctrine.

There is ample evidence to support the finding of the trial court that the value of the land condemned was the sum of $11,875, and that the value of the leasehold was the sum of $1500.

■ The question as to whether or not a public necessity existed for this park cannot be considered in this action for the reason that section 1241 of the Code of Civil Procedure provides that the resolution shall be conclusive evidence of such public necessity. In the absence of a showing of fraud, bad faith or abuse of discretion, the passage of the resolution is conclusive evidence of the public necessity for condemning the land for park purposes. There is no evidence that the board of supervisors was guilty of fraud, or of abuse of discretion, or acted in bad faith in the passage of said resolution. The claim of appellants is that the purpose the board of supervisors had in view in condemning this land was to turn it over to the United States. The evidence does not support this claim. The most that can be said of the evidence bearing on this question is that the board of supervisors expressed a willingness to convey this land to the United States at some time in the future provided the United States was willing to accept it. There was no agreement upon the part of said board that it would so convey the said land, nor any agreement that the United States would accept it.

The judgment is affirmed.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 17, 1935.