[Civ. No. 12013.   First Dist., Div. One.   May 26, 1942.]

EVA M. ARNERICH, Respondent, v. ALMADEN VINE-YARDS CORPORATION (a Corporation), Appellant.

David M. Burnett and John M. Burnett for Appellant.

George W. Patterson and R. G. Wilkins for Respondent.

PETERS, P. J.—Defendant appeals from a judgment based on a jury verdict that it take nothing for severance damages alleged to have been caused to defendant's main lands by plaintiff condemning an easement for underground pipe lines across the extreme northwest corner of defendant's lands. The judgment appealed from was rendered on a second trial of a portion of this proceeding. The first trial resulted in a determination that plaintiff had the legal right to condemn the easement, and in a verdict for defendant of $10 for the actual land taken for the easement, and $2,500 severance damages. A new trial was granted solely on the issue of severance damages. On the new trial the jury determined that defendant had suffered no severance damages at all, and it is from the judgment entered on that verdict that this appeal is taken.

The plaintiff operates a water company as a public utility on lands adjoining those of the defendant to the west. She brought this action in 1938 to acquire an underground easement ten feet wide and two hundred eleven feet in length across the extreme northwest corner of the lands owned by the defendant corporation. This northwest corner is separated from the main portion of defendant's lands by Kooser Road, the legal title to which, it was stipulated, is in defendant, but over which the public has an easement to pass. This corner, thus separated from the balance of defendant's land, contains one-third of an acre, and the easement, where it crosses this corner piece, occupies one-twentieth of an acre. The main lands of defendant are south of Kooser Road, and consist of 226.509 acres devoted to the growing of grapes and

alfalfa. For irrigation of its lands, and for the purpose of securing water to sell, defendant diverts water from Capitancillos Creek which flows along the southerly boundary of its lands. It maintains two pipe lines and a ditch. The pipe lines, through which water is diverted for sale to other landowners to the north, cross the main portion of its lands and also the one-third acre in the northwest corner. From the sale of water to other landowners defendant derives an annual income averaging in excess of $2,000. Plaintiff does not divert directly from the creek. She secures her water from two wells located on her property, from which water is pumped, stored in a small reservoir and piped to customers, mainly to the north of her properties.

The small corner piece was not always owned by defendant. Prior to 1938 the Southern Pacific Company had title to a railroad right-of-way along the westerly boundary of defendant's property and owned the one-third acre here in question. The defendant had a revocable license from that company to run its water pipes across that right-of-way. In 1935 the plaintiff secured a similar revocable permit from the Southern Pacific Company, and installed pipes across the corner of land now under discussion. Such pipes have been continuously maintained by plaintiff across this corner since that date. In 1938 the Southern Pacific Company abandoned its railroad and defendant secured the title to the one-third acre. Defendant then served on plaintiff notice that the permit had been revoked and that her pipe lines must be removed. Plaintiff thereupon instituted this action to condemn the right of way.

At the present trial it was the theory of defendant that the one-third acre was contiguous to its other lands; that because its water rights were connected with its main lands, and because its water pipes crossed both its main lands and the one-third acre, there was not only unity of title but also unity of use; that its main lands and the one-third acre parcel constitute but a single parcel for the purpose of awarding severance damages. The trial judge, on the present trial, over defendant's objections, struck from the record all testimony of defendant's three expert witnesses relating to the amount of damages caused by the easement to defendant's main lands on the grounds that such testimony was speculative and uncertain, and was founded on elements not proper in such cases. The court instructed the jury that, as a matter of law,

the one-third acre was not contiguous to the main lands of defendant for the reason that the two parcels were not physically contiguous, being separated from each other by a road, and because there was no proper evidence of unity of use. As a result, the jury was forbidden to award severance damages to the main portion of defendant's lands, but were instructed that they were limited to determining the damage, if any, caused to the one-third acre by the condemnation of the pipe line right of way. Pursuant to these instructions the jury returned a verdict that the one-third acre had not been injured by the easement (which was in accordance with the testimony of defendant's own witnesses) and therefore defendant had suffered no severance damages at all.

On this appeal defendant urges that the trial court on this second trial had no power to pass on the question of whether the two parcels were contiguous, for the reason that on the first trial the court found that the two parcels were contiguous, and a new trial was granted solely on the issue of the *amount* of severance damages and not on the question as to whether the two parcels were contiguous. It is also urged that, if the new trial included the issue as to whether the two parcels were contiguous, it was error to instruct the jury they were not contiguous. Neither of these questions need be passed upon on this appeal. This is so because we are of the opinion that the trial court properly struck from the record all evidence of damage to the main parcel, and without that evidence there is no evidence that defendant has suffered any compensable damage.

It was the theory of defendant that there was not enough water in Capitancillos Creek for both defendant and plaintiff; that by plaintiff pumping from her wells on her own property, the water in the creek would be diminished to the damage of defendant; that the competition from the water plant of plaintiff would diminish the profits of the water business of defendant; that the one-third acre was so strategically located that a pipe line through it constituted the only feasible means by which water could be conveyed to customers to the north. In support of this position defendant produced three expert witnesses, all thoroughly familiar with the properties involved and fully qualified to testify as to values. On direct examination two of these witnesses gave it as their opinion that the easement had depreciated the market value of the main parcel $25,000, while the third fixed such depreciation at $15,000. All three admitted that the condemned

easement in no way physically affected the main parcel. On cross-examination the expert Frazier Reed testified that the controversy over the water and pipe lines has lessened the value of the main parcel; that his figure of $25,000, at which he placed the depreciation, was the value of the water rights of defendant, and that he believed that such water rights were rendered valueless by the easement; that there was not enough water in the creek for both users; that in arriving at his conclusion that the main properties were depreciated in value he was taking into consideration the possibility that plaintiff was taking water that belonged to defendant, and that pumping on plaintiff's lands would reduce the amount of water in the creek; that a purchaser would not buy the property unless the water controversy was settled; that the pipe line going across the northwest corner of defendant's lands depreciates the value of the balance of the lands because "it serves notice of the right of the other people to take water out of the Capitancillos Creek"; that there is not enough water in that area to support two pipe lines; that that is the main reason for his estimate of depreciation; that litigation over the water rights necessarily depreciated the value; that he knew there was litigation over water rights between these parties prior to May 18, 1938, when this condemnation suit was instituted, and that the prior litigation also depreciated the value; that plaintiff "may use" the water to the detriment of defendant; that the plaintiff is diverting above defendant's diversion ditch and that is why they are condemning the right of way; that he had lost a sale of defendant's ranch because he could not assure the purchaser that the water rights were secure; that the pipe line, aside from the danger to the water rights, caused no damage at all to the balance of the ranch; that even if there were enough water for two users it would result in competitive bidding between the two distributors and a consequent loss of profits to defendant; that if water rights connected with property are not secure and are threatened by litigation the value of the property is affected; that the reduction in value "comes because the water right is threatened"; that "the taking of water by the Arneriches from above the diversion dam of the Almaden Vineyards Corporation affects the value of the Almaden Vineyards property to the extent, as I said, of $25,000."

W. L. Atkinson fixed the depreciation caused by the pipe

line at $15,000, and testified that "the construction of the pipe line and the development of a public utility to take water and sell it is in my opinion the reason for the depreciation in value"; that the damage "is caused by the reduction in the probable amount of income that this ranch will obtain" from the sale of water; that the value of the water right attached to defendant's lands has been reduced; that before the pipe line was put in the water right was secure while now it is not; that the two factors upon which he predicated his opinion were the loss of sales to water customers and the possible injury to the water right; that if there were no loss of water there would be no depreciation; that the threat to the water right of defendant was the principal cause of depreciation; that the "question of the water and the hazard of the loss of water to this ranch being situated as it is, is, in my opinion, the principal measure of damage"; that the "hazard" to which he referred was "the threat to remove from this property the value of the sale of water, and also the value of the water for the irrigation of the land."

James Bradley Clayton fixed the depreciation caused by the easement to the main lands of defendant at $25,000, and testified that this depreciation was caused by the "lack of being able to properly service their own land and the land of their customers with irrigation facilities"; that the damage to defendant is the "severing the water from the property"; that if the easement did not affect the water rights there would be no damage except the cloud created by the easement to the title of the one-third acre; that the litigation over water rights has affected the value; that litigation started in 1935.

This is a fair summary of the testimony of these three witnesses. It was this testimony that was stricken from the record by the trial judge on the ground that "the testimony as to the value after the severance is speculative and founded on elements that are not proper as elements in this case." This was the only testimony offered by defendant, upon whom rested the burden of proof on the issue of the amount of its damage. These witnesses predicated their estimate as to depreciation on their opinion that there was not enough water in that area to supply both plaintiff and defendant; that the pumping of water on plaintiff's land would lessen the water in the creek; that as a result of competition between plaintiff and defendant the latter would lose some of its profits from the sale of water; and that the litigation over water

rights has lessened the value of defendant's lands. Those elements have no relevancy at all to this proceeding. The plaintiff was not seeking to condemn any water rights of defendant. If plaintiff has water rights superior to those of defendant she has the legal right to use those rights and to sell the water and to transport it to her customers. If the defendant's water right is prior and superior to that of plaintiff it may restrain plaintiff from improperly using the water, or compel her to condemn the water right. This action involves only a right of way for the purpose of laying pipes across two hundred eleven feet of defendant's property. That is only a small portion of plaintiff's pipe line. The fact that that two hundred eleven feet of pipe is an integral part of plaintiff's water system, and that through the water pipes may flow water which may or may not belong to defendant, is a false issue in this proceeding. Defendant may not convert this action to condemn a ten-foot strip two hundred eleven feet long across the corner of its property for the purpose of placing water pipes therein, into an action wherein it may secure damages for injury to its water rights caused, not by the pipe line where it crosses defendant's property, but by pumping on the plaintiff's property. Obviously, as defendant's witnesses all admitted, the mere presence of the pipe line across that corner in no way injured defendant's main lands. It is only if plaintiff pumps water from her land and conveys it to her customers, and if the water so pumped does not belong to her, that defendant can suffer legal damage. If defendant had recovered $25,000 in this action based on the theory that the easement constituted a threat to its water right, and then instituted an action against plaintiff for an injunction or for damages on the theory that defendant's water rights were superior to those of plaintiff, this judgment would not be a bar to that action. The fundamental fallacy in defendant's position is the assumption that this is an action affecting its water rights. There is not one word in the complaint indicating directly or indirectly that plaintiff desires or intends to condemn the water rights. The rights of the parties to water in that watershed are not involved. That issue may be determined in a proper proceeding, but not in this proceeding. In this proceeding plaintiff cannot be compelled to pay for something she not only does not desire to condemn, but would not receive by the judgment. The damage, if any, to defendant's lands, is caused by the pumping operations of plaintiff. That damage would

be exactly the same in amount if, instead of condemning this strip, plaintiff had elected to condemn a strip on the adjoining Mirassou property. To repeat, according to defendant's witnesses, the only damage is the damage or threat of damage to defendant's water rights, caused not by the pipe line, but by the pumping operations, actual or threatened on plaintiff's property.

It is no answer to say that the one-third acre is so strategically located that it constitutes the only practical area through which pipes may be placed to pump water to the north. If that is so, it would be a factor in fixing the value of the easement, or the damage to the one-third acre. So far as the value of the easement is concerned, that was fixed at $10 by the judgment on the first trial. Defendant had the opportunity to appeal from that judgment, but did not do so, and it now has become final. On this appeal that is a closed issue. ■ So far as the damage to the balance of the one-third acre is concerned, all of defendant's witnesses admitted and testified that there was no damage, except the cloud on the title. The jury found, on proper instructions, that this did not constitute a material damage. Its finding is supported and cannot be disturbed.

■ To recover severance damages under section 1248, subdivision 2, of the Code of Civil Procedure, the loss in market value claimed must directly and proximately flow from the taking. Damage which is speculative, remote, imaginary, contingent, or merely possible, or damage caused by competition, or recovery in advance for torts or other injuries that may or may not be committed cannot serve as a legal basis for recovery. (2 Nichols on Eminent Domain, (2d ed.) p. 736, § 239; 29 C.J.S., p. 1013, § 154; *Coast Counties Gas & Electric Co.* v. *Miller & Lux, Inc.*, 118 Cal. App. 140 [5 P. (2d) 34]; *East Bay Mun. Utility Dist.* v. *Kieffer*, 99 Cal. App. 240 [278 Pac. 476, 279 Pac. 178].)

Inasmuch as defendant offered no proper evidence at all that it had suffered any legal damage, the judgment appealed from is the only judgment that could have been entered in this case. This makes it unnecessary to pass on the other questions raised.

The judgment appealed from is affirmed.

Knight, J., and Bray, J., pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 23, 1942.