[Civ. No. 14748. First Dist., Div. One. Mar. 18, 1954.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Respondent, v. SCHULTZ COMPANY (a Corporation), Appellant.

Gaylord & Gaylord, Gardiner & Riede and Robert B. Gaylord for Appellant.

Robert E. Reed, Holloway Jones, Jack M. Howard, John P. Horgan and Thomas F. Vizzard for Respondent.

PETERS, P. J.—This action was brought by the state, through its Department of Public Works, to condemn the front 96 feet of a tract of land having a 300-foot frontage owned by the Schultz Company. The land abuts Highway 101 in Marin County and was condemned as part of a plan to convert the highway into a freeway, with certain outer highways as feeders. The jury fixed the value of the condemned parcel at $5,700, and found that there were no sev-

erance damages or special benefits to the uncondemned parcel. The trial court ordered the parcel in question condemned, including any abutter's or access rights appurtenant to the remaining land. Schultz Company appeals.

Schultz Company owned about 5 acres of land, acquired by it in 1946 for $15,000. Since then it has expended about $12,000 in filling the property. The complaint in this action was filed January 24, 1949. This 5-acre plot has a 300-foot frontage abutting the present highway. The state seeks to condemn a strip averaging 96 feet in depth along this 300-foot frontage, and so seeks to take about six-tenths of an acre, leaving the Schultz Company with about 4¼ acres. For the six-tenths of an acre condemned Schultz Company has been awarded $5,700. Computed on an acreage basis and apportioning the filling costs, this six-tenths of an acre cost Schultz Company about $3,240 which was expended within the three years prior to the filing of the action.

The front 30 feet of the 96-foot strip sought to be condemned was impressed with an easement for the purpose of a road, which easement existed when the Schultz Company acquired the land. There were reciprocal 30-foot easements in favor of the Schultz property over the property on both sides of it, these contiguous 30-foot strips forming a side road parallel to the existing highway, and used by the abutting landowners. In addition, the Schultz Company directly in front of its property, had a 20-foot right of limited access to Highway 101. Access rights to the remainder of the 300-foot strip had been conveyed to the state prior to the time Schultz Company acquired the area.

The judgment here involved provided that the proposed freeway and outer highway were to be so constructed that the uncondemned portion of the Schultz Company property would abut the proposed outer highway, and that the outer highway should be connected with the freeway at such points as should be determined by public authority. The judgment condemned not only the fee to the 300-foot by 96-foot strip, but also all abutter's access rights appurtenant to the uncondemned land.

The evidence showed that the front 10 feet of the 30-foot strip that was impressed with an easement for road purposes, was also impressed with an easement in favor of the Pacific Telephone and Telegraph Company for the purpose of maintaining an underground cable. The Pacific Gas and Electric Company had the right to maintain electric wires over a

portion of the uncondemned land. The evidence also showed that when the action was filed Schultz Company had just completed construction of a foundation for a proposed building, and that such foundation was partly on condemned and partly on uncondemned land. The condemnation rendered this foundation valueless.

The respondent made out its case through the testimony of Sidney Silver, an engineer in the Department of Public Works, and through the introduction of certain exhibits prepared by that department showing the proposed improvement. During Silver's testimony it developed that this proposed plan, as disclosed by an exhibit, had not been officially approved by resolution of the State Highway Commission, but probably would be so approved substantially as proposed. Over appellant's objections the exhibit was admitted into evidence. On this appeal appellant argues at length that, since the unapproved plan is subject to changes, appellant may suffer many items of damage not disclosed by the unapproved plan, but that the jury was not allowed to consider these items in fixing damages. It should be mentioned that the judgment requires the respondent to construct the improvement "substantially" as shown by the proposed plan.

On this appeal many of the numerous points raised relate to the giving or refusing of particular instructions. All of the objections, however, can be related to several theories advanced by appellant. These theories will be separately considered.

*Does the condemnation leave appellant with an isolated tract of land?*

Appellant correctly points out that the resolution of the Highway Commission authorizing this condemnation proceeding required the condemnation of the fee in the condemned strip, including abutter's and existing access rights. This access right was to a 20-foot opening leading to the existing highway. The balance of the access rights to the 300-foot strip had been conveyed to the state by appellant's predecessor in interest, and appellant purchased the strip with the right of access being limited to the 20-foot opening. The judgment condemned the fee and the abutter's and access rights of appellant as provided in the resolution. The judgment also provided that appellant's uncondemned parcel is granted a right of access to the outer highway when it is constructed, and that such outer highway shall connect with the proposed

freeway in such places as shall be determined by public authority. Appellant contends that until the freeway is constructed, which may be years in the future, its remaining parcel has been deprived of all access rights to the existing highway, and that it is left with an isolated landlocked parcel that possesses no legal right of access to the existing highway. If this were true it would constitute a major item of damage. But the trial court refused to submit this issue to the jury because, during the trial, counsel for respondent offered to stipulate that Schultz Company could retain the legal right to its existing 20-foot access to the highway until the freeway was constructed. This stipulation was refused by appellant, but the judgment contains an express provision conferring this right on the uncondemned parcel.*

Appellant strenuously contends that counsel for respondent and the trial court had no legal right to grant this limited right of access to appellant, and that the provision in the judgment so providing is void as beyond the court's power. Based on these premises it is urged that the failure to award damages based on the theory that the uncondemned parcel would be completely landlocked until the freeway was built was prejudicial and requires a reversal.

Appellant's argument proceeds as follows: By section 102 of the Streets and Highways Code the power to condemn property for roadway purposes, and to determine the extent of the condemnation, is vested in the Department of Public Works, it determining such matters by resolution. Section 103 makes the resolution conclusive evidence of the fact that the interest described in the resolution was necessary. Here the resolution was for the condemnation of the fee, and of the abutter's and access rights to the existing highway. It is argued that neither counsel nor the court had the legal right to condemn less. In the absence of an amendment to the resolution of the Department of Public Works, so it is claimed, the court had no legal right to provide in its judgment that existing access rights should be preserved until the freeway was constructed. Such a provision, it is urged, is not binding on the state, and is not enforceable by appellant, so that in the future the state may properly deny to it the right to use the condemned parcel to reach the existing highway. The

---

*Thus the judgment provides "that until said improvement shall have been constructed, said remaining property shall have access over said Parcel 1 [the condemned area] to the existing highway through the existing 20 foot opening."

so-called reservation of access rights amounted to no more than an ineffective promise to use the condemned parcel in a particular manner.

Appellant predicates these arguments upon the cases that draw a distinction between a right reserved to the owner of property and an attempted promissory limitation on the use of property unqualifiedly condemned. Mere promises by the condemner are ineffective and cannot operate to reduce damages. (See exhaustive annotation and collection of cases in 7 A.L.R.2d, starting at p. 392.)

In the instant case we are not concerned with a mere promise of the Department of Public Works. Under the judgment, reasonably interpreted, there has been reserved to appellant the legal right to use the 20-foot opening on the condemned parcel as a means of access to the existing highway, until the improvement is constructed. That being so, the real question is not whether this was a mere ineffective promise, but whether the reservation of this right to appellant was within the power of the court.

If appellant were correct that the resolution and the judgment were in conflict, there might be considerable merit in its contentions that the reservation in the judgment was void. This is so because under sections 102 and 103 of the Streets and Highways Code it would appear that, as contended by appellant, any attempt by a court to condemn less of an interest than is provided in the resolution of the department is void. By section 103 the Legislature has provided that the department and not the court shall determine the extent of the interest necessary to be condemned to construct the improvement. The department's resolution is made "conclusive evidence" of that fact. It would seem to follow that the purpose of this enactment would be defeated if a court could determine, validly, that a lesser interest should be condemned than is provided in the resolution. A judgment purporting to condemn a lesser interest would be contrary to the evidence that is made conclusive. It therefore may be assumed that if the judgment and resolution are in conflict the judgment would have to be reversed.

The difficulty with appellant's argument is that the resolution, reasonably interpreted, is not only not in conflict with the judgment, but is entirely consistent with its purpose and intent. Before the resolution was passed the appellant had a limited right of access to the highway. This right of access,

among other things, was condemned. But the condemnation resolution conditions the taking of the existing abutter's rights of Schultz Company upon the remaining land having access to an outer highway which shall be connected with the freeway.* Until that freeway is constructed, it is necessarily implied that the existing conditions will continue. That is precisely what the judgment provides. Thus, no stipulation was necessary to enforce what was necessarily implied in the resolution.

Moreover, the resolution expressly conferred on the counsel for the department the power to enter into stipulations for changes in location in the access opening.† It necessarily follows that if counsel had this authority to agree to changes in the location of the existing access opening, he necessarily had the power and authority to stipulate for a continuation of such opening.

*Was it error to instruct the jury that severance damages must be computed on the assumption that the freeway was a completed project?*

The appellant offered, and the trial court refused, to give an instruction to the effect that damages must be based on conditions as they existed on January 24, 1949, when the complaint was filed, and without assuming when or whether a freeway would ever be constructed as proposed. The court not only refused this instruction, but specifically instructed that the jury was not to speculate upon whether the freeway will be constructed but should assume that such freeway will be constructed as proposed, and that in considering severance damages, or benefits, "you are to assume that the improvement has been constructed in the manner proposed." Appellant claims that this was error.

The precise nature of appellant's objection is somewhat obscure. In its opening brief appellant seems to urge that under section 1249 of the Code of Civil Procedure values had to be fixed and severance damages had to be determined on

*The resolution provides for the condemnation of the fee and abutter's and access rights and then provides "provided, however, that such remaining portion shall abut upon and have access to said outer highway which will be connected to the freeway . . ."

†The resolution conferred on the counsel for the Department the power "to stipulate in any condemnation proceeding brought under the authorization of this resolution for a change in the location of any access opening provided for in the description of any parcel hereinbefore described from one point in the boundary thereof to another," but no such stipulation "shall increase the width of any such opening to said highway."

the basis of conditions as they actually existed at the commencement of the action. Appellant seeks to fortify his argument by a reference to section 71 of the Streets and Highways Code under which the commission may alter or change the location of a state highway, and to section 72 under which it may abandon any easement acquired for highway purposes. It is true that section 1249 of the Code of Civil Procedure provides that the date upon which the damages shall be deemed to have accrued is the date of the summons, and that values shall be fixed as of that date. But it is section 1248 that provides what factors must be considered in ascertaining the damages. That section provides, in subdivision 2, that the jury must assess ''the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, *and the construction of the improvement in the manner proposed by the plaintiff*.'' (Italics added.) Subdivision 3 requires the 'jury to assess separately benefits to the uncondemned parcel caused ''by the construction of the improvement proposed by the plaintiff.''

It is this section of the code that fixes the factors that must be considered in ascertaining damages. ██ It clearly provides as to severance damages and benefits that they must be based on the assumption that the improvement is completed. (*Sacramento etc. R. R. Co.* v. *Heilbron,* 156 Cal. 408, 414 [104 P. 979]; *People* v. *Ricciardi,* 23 Cal.2d 390, 401 [144 P.2d 799]; see, generally, 89 A.L.R. 879.)

In its reply brief appellant seems to have abandoned the above argument, but there argues that the Department of Public Works has not officially approved the improvement. This contention is predicated on the fact that the proposed plan had not been officially approved by resolution of that department. Section 1248 of the Code of Civil Procedure, in subdivision 2, refers to ''the improvement in the manner *proposed* by the plaintiff'' and in subdivision 3 to ''the improvement *proposed* by the plaintiff.'' It seems to be appellant's present contention that an improvement does not become a ''proposed'' improvement until specifically approved by resolution of the department. ██ The Highway Commission has adopted a resolution to condemn this parcel for highway purposes. Through its agents and employees the department caused to be drafted a proposed plan. Through its engineer and its counsel it presented that plan to the court as the plan drafted by the department for the proposed

highway. It seems clear that such plan is a plan "proposed" by the department within the meaning of section 1248 of the Code of Civil Procedure.

Based on these same erroneous arguments appellant contends that it was error to have admitted the proposed plan into evidence. The challenged exhibit was identified by the engineer of the department as representing a picture of the proposed improvement drafted by department engineers. The details for the plan were supplied by the district office and by the district engineer in charge of operations. It clearly showed how the proposed plan would affect appellant's property. Section 1248 of the Code of Civil Procedure, as already pointed out, refers not to final and binding plans, but to the severance damages caused by "the construction of the improvement in the manner *proposed* by the plaintiff." This was such a plan "proposed" by the department within the meaning of that section.

Under the pertinent statutes the department is charged with the duty of planning construction of highway and freeway improvements. (Sts. & Hy. Code, §§ 90-92; § 100.1.) The plans and specifications are not officially approved by the department by resolution until the contract for the improvement is let. (Gov. Code, §§ 14270-14272.) By necessity, planning for the improvement must take place, and in many cases the condemnation of the appropriate lands must be started, before moneys for the construction of the improvement are available, that is, before the state is ready to ask for bids for the construction. The fact that no resolution had been passed by the department approving the proposal is wholly immaterial. The plans were those of the department and the judgment fixes damages based on the assumption that such plans will be carried out substantially as planned. The judgment is correctly predicated on that assumption.

There was no error in the instructions relating to the proposed plan nor in its admission into evidence.

*Did the trial court properly rule that possible future changes in the improvement that might result in damage to the retained land could not be recovered in this action but could be recovered in a future action?*

Several times during the trial the judge made statements to the effect that the damages had to be fixed on the theory that the proposed freeway would be completed substantially in accordance with the plan submitted by the department,

and also stated that if the plan were changed and if such change resulted in injury to the retained parcel, appellant could maintain a subsequent action for such damage. A proposed instruction to the effect that the state was not bound by the proposed plan, having the legal right to modify or change it, and that a final award had to be rendered in this action encompassing all possible damage that might arise out of any change or abandonment, was refused. In its judgment the court expressly provided ''that said improvement shall be constructed in substantially the manner'' as proposed.

Appellant contends that in a condemnation action the damages must be awarded once and for all, that the judgment is final, and that in the future, in the event of a major modification or abandonment that might adversely damage the retained land, it would be without remedy. ■ While it is true that a condemnation award must ''once and for all'' fix the damages, present and prospective, that will accrue reasonably from the construction of the improvement, and in this connection must consider the most injurious use of the property reasonably possible (*East Bay Mun. Util. Dist.* v. *Lodi*, 120 Cal.App. 740 [8 P.2d 532]), that does not mean that the jury may speculate on the possibility of damage from some future abandonment of the improvement. Remote, speculative, or conjectural elements of damage cannot be submitted to or considered by the jury. (*Coast Counties Gas & Elec. Co.* v. *Miller & Lux Inc.*, 118 Cal.App. 140 [5 P.2d 34].)

■ In *People* v. *Adamson*, 118 Cal.App.2d 714 [258 P.2d 1020], the court, after first holding that the precise point here made was without merit because it involved purely speculative elements of damage, stated (p. 722): ''Appellant seems to fear that the point of connection between the outer highway and the freeway may be changed in the future, and that in that event she would be precluded by the instant action from bringing an inverse condemnation proceeding to recover additional severance damages to her remaining property. However, it is the law of this state that damages not necessarily included in the issues in a condemnation action may be recovered in a subsequent action. [Citing cases and other authorities.]'' This case disposes adversely to appellant's argument on this point.

■ Of course, the provision of the judgment requiring the improvement to be constructed substantially as proposed cannot operate so as to prevent the department from making changes if it so desires. The law, as appellant correctly points

out, confers the power to make such determinations on the department and the court has no power to deprive the department of that power. The provision was obviously inserted in the judgment to protect the appellant. If, in the future, the plans are changed and severance damage to the retained parcel occurs, and appellant brings an action to recover such damage, such provision will conclusively establish that the damages awarded were predicated on the construction of the improvement substantially as proposed, and did not include damage resulting from a change in the plans.

*Did plaintiff's witnesses fail to segregate severance damages and benefits as required by section 1248, subdivisions 2 and 3, of the Code of Civil Procedure?*

Section 1248, subdivision 3, of the Code of Civil Procedure, expressly requires severance damages and benefits to be assessed separately. The jury brought in separate verdicts. It found that the value of the land taken was $5,700 and that there would be no severance damages and no special benefits. The real question is whether the testimony of plaintiff's witnesses so segregated these items that the jury had evidence upon which to base these findings.

All three of plaintiff's experts testified that when the freeway is constructed there will be no severance damages at all, and that when so constructed there will be material benefits to the remaining land, valued by them at $1,800, $2,000 and $3,600. When asked to explain their opinions each witness testified that, in his opinion, construction of the freeway and outer highway would more than offset the loss of the present means of access to the highway. Thus, while they did testify that there would be no severance damages, and separately fixed their estimates of benefits, their conclusions were predicated on the fact that the completed project would provide benefits as great or greater than those lost by the severance. That evidence was sufficient upon which to predicate the separate verdicts here made on severance and benefits. As to both items, as already pointed out, section 1248, in subdivisions 2 and 3, requires the jury to consider the effect of the proposed improvement. This, plaintiff's witnesses did. ▓ They testified that with the improvement there would be no severance damages, and would be some benefits. When they testified that severance damages would be more than offset by benefits, they were testifying precisely as required by the section.

*Is the finding of no severance damage supported by evidence?*

Appellant claims that it is not. Of course appellant must and does admit that respondent's experts so testified, and respondent relies on this evidence to support the challenged finding. But appellant correctly points out that all the witnesses admitted, and the exhibits demonstrated, that when the condemnation started there was a building foundation constructed partly on the condemned and partly on the uncondemned land. ■ During the trial respondent admitted that the entire foundation, because of the condemnation, was a total loss, and that appellant should be reimbursed for its total value. These are admitted facts. Based upon them, appellant argues that the value of the foundation on the retained land could only be assessed as severance damages. Therefore, so it is claimed, the finding of no severance damage is demonstrably unsupported. While this argument may appear to possess some logic, the difficulty with it is that it is contrary to the theory upon which the case was tried. The experts on both sides, without objection, treated the value of the foundation on the retained land as part and parcel of the value of the condemned parcel and not as an item of severance damages. In other words, the value of the foundation on the retained land was included in the estimates of the experts as to the value of the land taken. It was therefore included in the $5,700 award. Under such circumstances, appellant is in no legal position to complain of the method of assessing this portion of the damage, having invited and participated in the error, if error it be. (*Realty Bonds etc. Co.* v. *Point Richmond etc. Co.*, 171 Cal. 238 [152 P. 433]; *Jentick* v. *Pacific Gas & Elec Co.*, 18 Cal.2d 117 [114 P.2d 343].)

*Was it error to instruct the jury that nominal damages only could be awarded for the taking of the front 30 feet of the condemned land?*

The front 30 feet of the condemned strip was impressed with an easement for roadway purposes, and, in addition, the telephone company had an easement for an underground cable in the front 10 feet of the 30-foot strip. There was no proof that the subsurface of this 30 feet had any special value.

■ It is undoubtedly the law that when there is an easement on the surface of condemned land, in the absence of proof of some special value attaching to it, the underlying fee is to be considered as only of nominal value. (*Southern*

*Pac. R. R. Co.* v. *San Francisco Sav. Union,* 146 Cal. 290 [79 P. 961, 106 Am.St.Rep. 36, 2 Ann.Cas. 962, 70 L.R.A. 221] ; *Romero* v. *Department of Public Works,* 17 Cal.2d 189 [109 P.2d 662] ; *Eachus* v. *Los Angeles etc. Ry. Co.,* 103 Cal. 614 [37 P. 750, 42 Am.St.Rep. 149].) While here there was no evidence of any special value attaching to the underlying fee, appellant claims that the 30-foot strip had more than a nominal value because this strip provided access to the highway and because it was connected with reciprocal easements in Schultz Company's favor in similar strips on the adjoining lands. The challenged instruction, according to appellant, deprived it of compensation for the loss of these reciprocal easements and the access right.

So far as the loss of the access right is concerned, that problem has already been considered. Appellant will not lose, but will keep its present access right until the improvement is constructed, at which time it will gain a new access right as good or better than the one it now possesses. So far as the loss of the reciprocal easements are concerned, the jury properly considered this problem in passing on severance damages. The jury's finding that such loss did not create any severance damage is amply supported by the evidence that the completion of the proposed outer highway would afford an adequate substitute for the present roadway. Thus, the challenged instruction was correct and did not have the effect claimed for it by appellant.

*Were the instructions in reference to the right of the state to offset severance damage by benefits erroneous?*

Appellant objects to portions of two instructions to the effect that the state is entitled to have severance damages, if any, reduced by the value of the special benefits to the retained land. This is a correct statement of the law, but appellant correctly points out that the jury assesses severance damages and benefits separately, and the offsetting, if any, is to be done by the court. It is therefore urged that the two challenged instructions could not help but confuse the jury.

This contention is without merit. The portion of the instruction appearing on page 498 of the reporter's transcript challenged by appellant merely correctly declares that the state is entitled to the offset. It does not state that the jury is to make the offset. In fact, the challenged excerpt is part of a general instruction clearly telling the jury that it should

make separate assessments of damages and benefits. The portion of the instruction appearing on page 491 of the reporter's transcript challenged by appellant has also been lifted from context. The very next sentence after the challenged portion expressly states that the court will make the necessary deduction or offset. In addition, the court, on page 499 of the reporter's transcript, clearly and at length told the jury what its functions were and stated that it was the court's function to make the deduction or offset. There was no error in these instructions.

*Was the instruction on the right of the jury in weighing the evidence to use its personal knowledge erroneous?*

The court properly and at length instructed that the jury was to decide the case solely upon the evidence before it, the reasonable inferences to be drawn therefrom, and the presumptions allowed by law. But in the course of many detailed instructions on how to ascertain market value, and the elements to be considered in fixing it, the court gave the following general instruction: "In estimating the market value of the property, the jury, in weighing the evidence, is permitted to exercise their own individual judgment as to the values, upon subjects within their own knowledge, which they have acquired through experience and observation."

Appellant urges that this instruction erroneously told the jury that it could place a valuation on the condemned parcel based upon its own estimates rather than upon the evidence in the case, and contends that this was highly prejudicial.

While not a model of clarity, and somewhat ambiguous, the giving of the instruction was not prejudicial error. Either when read alone or with the other instructions it could only mean that "in weighing the evidence" the members of the jury may exercise their judgments in the light of their own general knowledge of the subject. It does not state that the jury members may close their eyes to the evidence and decide the case in accordance with their own ideas. It simply tells the jury, in effect, that the jury members may judge the weight and force of the evidence introduced by their own general knowledge of the subject to be considered. That is a self-evident fact.

Appellant makes much of the fact that the challenged instruction was apparently taken from the dissenting opinion in *Beveridge* v. *Lewis,* 137 Cal. 619, 628 [67 P. 1040, 70

P. 1083, 92 Am.St.Rep. 188, 58 L.R.A. 581]. It is true that the instruction is discussed in the dissenting opinion. That opinion contains a good discussion of this instruction, and many cases are cited to show that it merely states a commonplace truism. The majority opinion in that case does not mention the instruction. There is nothing in the majority opinion contrary to what was said by the dissent on this point. That the reasoning of the dissenting opinion on this point was correct is amply demonstrated by the later cases upholding similar instructions. (*Vallejo etc. R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, 576 [147 P. 238] ; *People* v. *Broome*, 120 Cal.App. 267, 273 [7 P.2d 757].)

*Were the instructions on market value erroneous?*

The court instructed that the jury must exclude from its considerations "speculative or conjectural uses or enterprises or the profits which might reasonably result therefrom." It refused an instruction offered by appellant to the effect that in fixing compensation the jury should "take into consideration the availability and adaptability of the property to meet the future demands that may fairly be anticipated, through growth of the community, and it [if] by reason of the strategic location of the property in respect to such future growth, there is potential competition for the property, you may also take such strategic location and such potential competition into consideration in fixing the value of the property." Appellant objects to both rulings.

We have read the numerous instructions given on the subject of the applicable rules to be followed in arriving at market value. The court fully and fairly instructed on the issue in accordance with the rules established by the case of *Sacramento etc. R. R. Co.* v. *Heilbron,* 156 Cal. 408 [104 P. 979], and the cases following it. ▪ It properly instructed that market value as of the date the complaint was filed is the test, and not some speculative potential value that the future may or may not bring. ▪ It properly instructed that in considering value all the purposes to which the land is adapted should be considered, that the value is determined by considering the highest use to which the land may reasonably be put within the reasonably near future, and by what a purchaser would now pay for such land considering such prospective uses. The instructions given covered the subject. The portion of the refused instruction that should have been submitted to the jury was covered by the other instructions. The challenged instruction that

"speculative" or "conjectural" uses should be disregarded was correct when read with the other instructions. (*Long Beach City H. S. Dist.* v. *Stewart,* 30 Cal.2d 763, 769 [185 P.2d 585, 173 A.L.R. 249] ; *Joint Highway Dist. No. 9* v. *Ocean Shore Railroad Co.,* 128 Cal.App. 743, 763 [18 P.2d 413].)

*Was public necessity for the taking shown?*

Appellant attacks the resolution of the Highway Commission authorizing the condemnation. That resolution declares that "public interest and necessity require the acquisition, construction and completion . . . of a public improvement, namely a State Highway," and "public interest and necessity require the acquisition for said public improvement of the real property . . . hereinafter described." The appellant's property is described in the resolution. Section 103 of the Streets and Highways Code provides that such a resolution "shall be conclusive evidence:

"(a) Of the public necessity of such proposed public improvement.

"(b) That such real property or interest therein is necessary therefor.

"(c) That such proposed public improvement is planned or located in a manner which will be most compatible with the greatest public good and the least private injury."

Although this section makes the resolution "conclusive evidence" of the facts set forth in the section, appellant urges that it may be attacked on the ground of abuse of discretion. ▮ It is true that the resolution may be attacked for fraud, bad faith or abuse of discretion. (*San Benito County* v. *Copper Mt. Min. Co.,* 7 Cal.App.2d 82, 87 [45 P.2d 428] ; *People* v. *Milton,* 35 Cal.App.2d 549 [96 P.2d 159].) But as was said in the Milton case (p. 552) : "that resolution becomes conclusive of such facts recited therein, and the same may not be disputed in the absence of fraud, bad faith, or an abuse of discretion. [Citing cases.] But to raise these issues it is necessary to specifically charge fraud, bad faith, or an abuse of discretion on the part of the Highway Commission. . . . This was not done in the case before us, either by way of pleadings or evidence, and the issue cannot be raised for the first time on appeal." In other words, such a defense is an affirmative defense, must be pleaded, and the burden to establish it is on defendant. Admittedly, appellant did not affirmatively allege fraud, abuse of discretion or bad faith in its answer, and the mere

general denial of the allegation of public necessity found in the complaint is not sufficient to raise these issues. But appellant urges that the complaint itself shows an abuse of discretion because the resolution is directed only at the strip of land 300 feet by 96 feet owned by appellant. It is contended that it obviously is an abuse of discretion to take this isolated strip for the purpose of building a highway, and that there is no proper evidence that this strip was to be connected with other strips. Thus, it is urged, an abuse of discretion necessarily appears from the face of the complaint. Obviously, the resolution could and should be directed at only the land involved in the proposed action. The resolution shows that a freeway is to be constructed and the evidence shows the proposed plan of construction of the entire project. Basically, appellant's contention is predicated upon its erroneous belief that no valid plan of improvement has been adopted by the state. The invalidity of that contention has already been considered. There is no merit in the point under discussion.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.