[Civ. Nos. 17224, 17267.   First Dist., Div. Two.   May 27, 1957.]

CITY OF MENLO PARK, Respondent, v. JAMES ARTINO
et al., Appellants.

[Two Cases.]

Crist, Peters & Donegan and Elton F. Martin for Appellants.

James T. O'Keefe, Jr., for Respondent.

KAUFMAN, P. J.—This proceeding in eminent domain was brought by respondent, city of Menlo Park, a municipal corporation, against the appellants, who are the owners of certain lands, sought by respondent for the construction of off-street parking plazas. These consolidated appeals are taken from a judgment after a verdict fixing the amount of appellants' damages in condemnation proceedings and from an order granting respondent immediate possession, after denial of a writ of supersedeas by this court.

A detailed statement of the facts is necessary for a proper understanding of the issues raised on appeal.

Under the respondent's land use and zoning ordinance, the six-block strip of Santa Cruz Avenue, the main business street of Menlo Park, which is bordered by Menlo Avenue on the north, University Drive on the west and El Camino Real on the east, is zoned for retail commercial uses without any requirement of parking facility in connection with such use. With the exception of a few vacant lots the entire six-

block strip is occupied and being used for such purposes. An alley runs the full length of the six-block area, at the rear of the commercial frontage on the south side of Santa Cruz Avenue. The respondent's land use and zoning ordinance of April 28, 1953, with the exception of two markets on parcels of property zoned commercial and parking, placed the area bounded by the alley on the north, Menlo Avenue on the south, University Drive on the west in an R-4-T Zone, which means multiple family residence with a transitional suffix. This zoning classification permits multiple residence and parking uses and recognizes that the area's uses are transitional and moving into commercial uses. Appellants' parcels are within this transitional zone. In August 1954, several of the lots in the transitional area were rezoned to central commercial and public parking uses to permit the construction of Bettencourt's Supermarket with adjoining customer parking. (Ord. Nos. 250, 259.) On February 23, 1955, the city council similarly rezoned several other lots in the transitional area to permit the construction of Draeger's Supermarket and customer parking area (Ord. No. 258) and also adopted a resolution of intention, Number 1955-1, to acquire and construct parking plazas and to pay the cost thereof by assessment upon the lands benefited thereby and to form an assessment district for that purpose. The assessment district includes lots in the city's central commercial zone which the city council determined would be benefited by the parking plazas. Under the resolution as adopted on April 12, 1955, no part of the costs of acquisition of land and construction of the parking plazas was to be borne by the public generally. All lands required for the parking plazas were secured by the respondent before the institution of this condemnation proceeding on July 1, 1955, with the exception of 11 parcels of which five parcels were originally involved in this case. As to the five parcels here involved the jury rendered a verdict and the court made the awards as follows:

Parcel 18 .............................$12,500.00
Parcel 11 ............................. 12,500.00
Parcel 9 ............................. 13,000.00
Parcel 6 ............................. 14,000.00
Parcel 14 ............................. 3,900.00

The owner of Parcel 6 did not appeal; the owners of Parcel 14 filed a notice of appeal and subsequently abandoned it. This appeal is taken by appellant Artino, the owner of

Parcel 18, and appellants, Garibaldi, the owners of Parcels 9 and 11, on these grounds:

(1) That the trial court committed prejudicial, reversible error by instructions which assumed that the market value of the appellants' lands was actually affected by the city's zoning ordinance, as this matter was a basic fact in issue which should have been left to the determination of the jury.

(2) That the parking plazas for which respondent seeks to take appellants' lands is not a public use within the meaning of Code of Civil Procedure, section 1238.1, and article I, section 14 of the State Constitution.

(3) That the trial court committed prejudicial error by directing the jury to disregard all evidence of severance damages as to Parcel 9.

These contentions will be discussed in the order presented.

1. Whether the trial court committed prejudicial error by instructing the jury that the market value of appellants' land was adversely affected by the zoning ordinance.

Appellants contend that the following instruction is erroneous as it assumes the basic fact in issue, namely, whether the zoning ordinance adversely affected the market value of appellants' land:

"The enactment of a zoning ordinance which is adopted by a city in good faith and which actually does affect the market value of real property is competent evidence in behalf of the city in a subsequent suit for condemnation of the property for public use. The city is not estopped from proving the actual market value of the property merely because its enforcement of police regulations may have affected the value of the property.

"The Land Use and Zoning Ordinance of the City of Menlo Park has been introduced in evidence as it is competent evidence to be considered in a suit for condemnation of property located within the district which is affected thereby, for the purpose of determining the actual market value thereof. The ordinance is competent evidence for or against the city which enacted it, when the municipality is a party to the condemnation proceedings. Zoning ordinances are uniformly sustained as valid exercise of the police powers of a municipality."

As stated in *Long Beach City H. S. Dist.* v. *Stewart*, 30 Cal.2d 763 at pages 768 and 769 [185 P.2d 585, 173 A.L.R. 249]: ". . . the general rule is that present market value must ordinarily be determined by consideration only of the uses for which the land 'is adapted and for which it is avail-

able.' The exception to this general rule is that if the land is not presently available for a particular use by reason of a zoning ordinance or other restriction imposed by law, but the evidence tends to show a 'reasonable probability' of a change 'in the near future' in the zoning ordinance or other restriction, then the effect of such probability upon the minds of purchasers generally may be taken into consideration in fixing present market value." That case was a proceeding to condemn land zoned for single family residences for a junior high school; the appellant there argued that the adaptability of the land for industrial purposes should have been considered. On this point the court said at page 766: ". . . appellant claims that in fixing the market value of the land, 'adaptability' for any use should be considered by the jury, but that 'availability' should not. Such is obviously not the law, for the jury should consider whether the land is or is not available for particular uses under existing zoning ordinances, as such 'availability' does affect market value." ▮ It is axiomatic that the instructions are to be read as a whole and in the light of the circumstances of the case in which they were given. In the instant case the ordinance was introduced into evidence (Plaintiff's Exhibit No. 2) and was considered by the expert witnesses of both parties in giving their estimates of valuations.

The appellants also contend that the giving of the first instruction complained above, assumed a fundamental fact in issue. However, when seen in the light of the rule of availability set forth above, this is not so. Appellants further contend that the jury must have relied on the instruction because the final result reached by the jury is closer to the value estimated by respondent's appraisers than the values estimated by appellants' appraisers. However, here the jury had the opportunity to hear and evaluate the testimony of experts on both sides. It should be noted that the appellants here made no motion under Code of Civil Procedure, section 1871, to have the trial court appoint experts on its own motion to assist it in resolving the conflict. ▮ All that appears here is that the lower court rested its determination of an issue of fact on conflicting evidence from which reasonable minds might draw different conclusions. Under such circumstances we are bound by the decision of the trier of facts. (*Southern Calif. Gas Co.* v. *Goss,* 149 Cal.App.2d 339 [308 P.2d 41]; *County of Los Angeles* v. *Carpenter,* 118 Cal.App.2d 871 [258 P.2d 1056]; *Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689].)

In *People* v. *Dunn,* 46 Cal.2d 639 [297 P.2d 964], it was held that it was not error to admit testimony that a change of zoning was reasonably probable. ■■ In the instant case the jury was not prevented from considering the reasonable probability of a change in the zoning ordinance as the trial court also instructed the jury as follows: "If you should find from the evidence introduced that there is a reasonable probability of a change in the existing zoning restrictions which now restricts the use of any of the property here being condemned, you may consider the effect of such probability of a change in the zoning restrictions on the minds of purchasers generally in fixing the market value of the property." Additional instructions on this point were also given. There was, therefore, no error in the trial court's refusal to give the instructions requested by the appellants, nor can we find any other prejudicial error in any of the other instructions complained of by the appellants. The instructions given were proper under the rulings of *Sacramento etc. R.R. Co.* v. *Heilbron,* 156 Cal. 408 [104 P. 979]; *People* v. *Marblehead Land Co.,* 82 Cal.App. 289 [255 P. 553]; *People* v. *La Macchia,* 41 Cal.2d 738 [264 P.2d 15]; *People* ex rel. *Dept. of Public Works* v. *Schultz Co.,* 123 Cal.App.2d 925 [268 P.2d 117].)

2. Whether the parking plazas for which respondent seeks to take appellants' lands is a public use within the meaning of Code of Civil Procedure, section 1238.1, and article I, section 14 of the state Constitution.

■■ As a municipal corporation has no inherent power of eminent domain and can exercise it only when expressly authorized by law, (*City & County of San Francisco* v. *Ross,* 44 Cal.2d 52 [279 P.2d 529]; *Harden* v. *Superior Court,* 44 Cal.2d 630 [284 P.2d 9]; *City of Los Angeles* v. *Koyer,* 48 Cal.App. 720 [192 P. 301]; *Mackay* v. *City of Los Angeles,* 136 Cal.App. 180 [28 P.2d 706]) the city of Menlo Park has no power to condemn private property for a use which is not public.

■■ Code of Civil Procedure, section 1238.1, provides: "Subject to the provisions of this title, the right of eminent domain may be exercised on behalf of the following public uses:

"1. Off-street parking. Off-street motor vehicle parking places, including property necessary or convenient for ingress thereto or egress therefrom, established by any city or city and county for public use."

Code of Civil Procedure, section 1241, provides: "Before

property can be taken it must appear: 1. That the use to which it is to be applied is a use authorized by law; 2. That the taking is necessary to such use; provided, when the board of directors of an irrigation district, of a public utility district, or of a water district or the legislative body of a county, city and county, or an incorporated city or town, or the governing board of a school district, shall, by resolution or ordinance, adopted by vote of two-thirds of all its members, have found and determined that the public interest and necessity require the acquisition, construction or completion, by such county, city and county, or incorporated city or town, or school district, or irrigation, public utility, or water district, of any proposed public utility, or any public improvement, and that the property described in such resolution or ordinance is necessary therefor, such resolution or ordinance shall be conclusive evidence; (a) of the public necessity of such proposed public utility or public improvement; (b) that such property is necessary therefor, and (c) that such proposed public utility or public improvement is planned or located in the manner which will be most compatible with the greatest public good, and the least private injury; provided, that such resolution or ordinance shall not be such conclusive evidence in the case of the taking by any county, city and county, or incorporated city or town, or school district, or irrigation, public utility, or water district, of property located outside of the territorial limits thereof."

Resolution Number 1130(k) adopted by the city council of Menlo Park on June 14, 1955, after describing among other parcels, the real property which is the subject of this action, declared that:

"The public interest and necessity require . . . a public off-street motor vehicle parking place and plaza upon, over and across those certain lands. . . .

"That the use of all of said lands for said public off-street motor vehicle parking place and plaza is a public use authorized by law."

We are in agreement with appellants' contention that neither the Legislature's designation nor the city's resolution that the parking plazas are a public use can make that which is in fact a private use become a public use. As stated in *University of Southern Calif.* v. *Robbins,* 1 Cal.App.2d 523, at pages 525-526 [37 P.2d 163] and recently quoted in *Linggi* v. *Garovotti,* 45 Cal.2d 20 at page 24 [286 P.2d 15]:
"The legislature must designate in the first place, the uses

in behalf of which the right of eminent domain may be exercised, and this designation is a legislative declaration that such uses are public and will be recognized by courts; but whether, in any individual case, the use is a public use must be determined by the judiciary from the facts and circumstances of that case. (Citation.) If the subject-matter of the legislation be of such a nature that there is any doubt of its character, or if by any possibility the legislation may be for the welfare of the public, the will of the legislature must prevail over the doubts of the court.''

Appellants rely on *City & County of San Francisco* v. *Ross, supra,* and *Barker* v. *Kansas City,* 146 Kan. 347 [70 P.2d 5]. However, both of these authorities are inapplicable and easily distinguishable from the instant case. In *San Francisco* v. *Ross, supra,* city and county of San Francisco sought to acquire certain lands which were to be leased to private parties for the construction and maintenance of off-street parking facilities. The Supreme Court held that the particular method employed was not a public use because the city and county was to retain no controls or regulations as to rates, fees, charges over the properties to be leased to private persons. In *Barker* v. *Kansas City,* 146 Kan. 347 [70 P.2d 5], a taxpayer's action to enjoin a city from taking property by eminent domain for parking areas and making assessments therefor, it was held that there was no right of condemnation because there was no statute which authorized cities to acquire and operate off-street parking and there were errors in the ordinance and in the procedural steps taken by the city. The appellants are correct that *City of Whittier* v. *Dixon,* 24 Cal.2d 664 [151 P.2d 5, 153 A.L.R. 956], chiefly relied upon by the respondent, only upheld the validity of the Vehicle Parking District Act of 1943. However, that case in recognizing that public parking places relieve congestion and reduce traffic hazards, is in accord with the broader interpretation of ''public use'' recently followed in this state. (*University of Southern Calif.* v. *Robbins, supra; Alexander* v. *Mitchell,* 119 Cal.App.2d 816 [260 P.2d 261]; *Redevelopment Agency* v. *Hayes,* 122 Cal. App.2d 777 [266 P.2d 105].)

Appellants further contend that because the two areas of the transitional zone which have been zoned commercial and have provided their own private parking, Draeger's and Bettencourt's Supermarkets, are excluded from the assessment district and because no part of the costs of the plazas

is to be paid out of general funds or bonds, the city had admitted that parking is entirely for the private benefit of Santa Cruz Avenue frontage.

This contention is aptly disposed of by the following statement made in *City of Whittier* v. *Dixon, supra,* at pages 667 and 668: "The levy of a special assessment is justified if the improvement is a public one and the property to be assessed will receive a special benefit. (Citations.) Merchants frequently acquire and operate private parking places to attract customers and vacate buildings when no parking space for customers is available. Parking places that tend to stabilize a business section, by making it readily accessible to trade, benefit the property in the vicinity."

" 'Public use' within the meaning of section 14 [art. I of the California Constitution] is defined as a use which concerns the whole community or promotes the general interest in its relation to any legitimate object of government." (*Bauer* v. *County of Ventura,* 45 Cal.2d 276 at page 284 [289 P.2d 1].) We cannot say that the above test has not been met in the instant case.

3. Whether the trial court erred in instructing the jury to disregard all evidence as to severance damages with reference to Parcel 9, and in its finding that Parcel 9 was not a part of a larger parcel.

Parcel 9, which is owned by appellants David and Emilia Garibaldi, is contiguous to Lots 11 and 12, also owned by the Garibaldi family. It is appellants' contention that pursuant to Code of Civil Procedure, section 1248, subdivision 2, they should be paid for the destruction of the unitary value of the two lots not taken (Lots 11 and 12), based upon the reasonable probability of the combined use of all three lots in the near future for commercial purposes. Appellants' expert witness testified that these three lots were the only piece of land of that size left on Menlo Avenue under one ownership and not commercially improved. At the time of this action each of the three lots had a separate dwelling on it. In January 1955, about five months before the institution of this proceeding the house on Lot 11 was moved there from another location and a driveway constructed. There was no evidence introduced which showed any intention to use these three lots in any manner other than as individual rental properties as they were being used. Under Code of Civil Procedure, section 1248, the owner is not entitled to severance damages for injury to separate and independent

parcels. To recover severance damages there must be unity of title (*San Benito County* v. *Copper Mt. Min. Co.*, 7 Cal. App.2d 82 [45 P.2d 428]; *City of Stockton* v. *Ellingwood*, 96 Cal.App. 708 [275 P. 228]) contiguity, (*People* v. *Ocean Shore Railroad, Inc.*, 32 Cal.2d 406 [196 P.2d 570, 6 A.L.R.2d 1179]; *Oakland* v. *Pacific Coast Lbr. etc. Co.*, 171 Cal. 392 [153 P. 705]) and unity of use. (*City of Stockton* v. *Marengo*, 137 Cal.App. 760 [31 P.2d 467].) There is no problem as to the presence of the first two requirements here. The controversy centers on the third requirement.

Appellants rely on *People* v. *Thompson*, 43 Cal.2d 13 [271 P.2d 507], which dealt with physically contiguous land crossed by a highway, and in which in affirming the severance damages awarded by the lower court, our Supreme Court said that there was no division of use but only a failure to use some of the property.

The case is distinguishable on that point, as here the three lots were used separately. In a somewhat similar situation involving the condemnation of one of three separate farms which were contiguous and under one ownership it was held that the issue of severance damages was not a proper issue for the jury. (*Sharp* v. *United States*, 191 U.S. 341 [24 S.Ct. 114, 48 L.Ed. 211].) As stated in *City of Stockton* v. *Marengo, supra*, at page 766: "To constitute a unity of property between two or more contiguous but *prima facie* distinct parcels of land, there must be such a connection or relation of adaptation, convenience, and actual and permanent use as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcels left, in the most advantageous and profitable manner in the business for which they are used. . . ." We are in agreement with the respondents here that the unity of use asserted by the appellants is prospective only and that, "To recover severance damages under section 1248, subdivision 2, of the Code of Civil Procedure, the loss in market value claimed must directly and proximately flow from the taking. Damage which is speculative, remote, imaginary, contingent, or merely possible . . . cannot serve as a legal basis for recovery." (*Arnerich* v. *Almaden Vineyards Corp.*, 52 Cal. App.2d 265 at p. 272 [126 P.2d 121].)

Appellants contend that there is substantial evidence in the record which would support a finding that the taking of Parcel 9 would cause a diminution of the value of Lots 11 and 12. ■ However, on appeal we are bound to indulge

in every intendment which supports the judgment of the lower court. (*Hind* y. *Oriental Products Co., Inc.,* 195 Cal. 655 [235 P. 438].) When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. (*Hartzell* v. *Myall,* 115 Cal.App.2d 670 [252 P.2d 676].)

It is our view that the record before us amply supports the verdict and judgment of the trial court and that no prejudicial error exists.

Judgment affirmed.

Dooling, J., and Draper, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 24, 1957. Carter, J., was of the opinion that the petition should be granted.