[No. S029018. Dec. 20, 1993.]

CITY OF SAN DIEGO, Plaintiff and Respondent, v.
FRITZ NEUMANN et al., Defendants and Appellants.

**COUNSEL**

Asaro & Keagy, Roscoe D. Keagy, Richard R. Freeland, Arnold Neves, Jr., Crosby, Heafey, Roach & May, Gideon Kanner and M. Reed Hunter for Defendants and Appellants.

Berger & Norton and Michael M. Berger as Amici Curiae on behalf of Defendants and Appellants.

John W. Witt, City Attorney, C. Alan Sumption, Chief Deputy City Attorney, Leslie J. Girard and Linda Bartz Kinsey, Deputy City Attorneys, for Plaintiff and Respondent.

William M. McMillan, Charles E. Spencer, Jeffrey A. Joseph, Erickson, Beasley, Hewitt & Wilson, Alice M. Beasley and Aaron D. Kaufmann as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**PANELLI, J.**—When property acquired by eminent domain is part of a larger parcel, compensation must be awarded for the injury, if any, to the remainder (Cal. Const., art. I, § 19; U.S. Const., 5th Amend.; Code Civ. Proc., § 1263.410, subd. (a)). Such compensation is commonly called severance damages. When the property taken is but part of a single legal parcel, the property owner need only demonstrate injury to the portion that remains to recover severance damages. The question presented here is whether, and under what circumstances, separate but contiguous legal parcels in common ownership currently devoted to diverse uses may be aggregated to form a "larger parcel" in order to prove entitlement to severance damages.

We conclude that such separate legal parcels may be aggregated and considered as one "larger parcel" when the owner establishes a reasonable probability that all of the contiguous commonly owned lots will be available for development or use as an integrated economic unit in the reasonably foreseeable future. We do not hold that the property owners here are entitled to an award of severance damages; rather, we conclude that the matter must be remanded to the trial court so that the property owners may be given the opportunity to demonstrate that there exists a reasonable probability that the

contiguous commonly owned lots will be available for development as an integrated economic unit in the reasonably foreseeable future. Should the owners succeed in that attempt, they may then proceed to prove the injury, if any, caused by the government's condemnation of a portion of the "larger parcel."

## FACTS

Defendants owned a trailer park in the City of San Diego. (Lots 19 and 23; see map in appen.) In addition to the trailer park, defendants owned two parcels of land: parcel 4, containing lots 5 and 6, and parcel 9, containing lot 17. These two parcels jutted out from the trailer park and abutted San Ysidro Boulevard. Parcels 4 and 9 were separated by intervening lots owned by other persons. The parcels adjoined the trailer park, but were separated from it in the case of lot 17, by a fence, and in the case of lots 5 and 6, by a 12-foot slope. At the time of the condemnation, the larger lot 19 was zoned residential and the smaller lot 23 was zoned commercial. The city community plan noted that lot 19 was to be designated "future commercial." The entirety of parcels 4 and 9 was zoned commercial at the time of the taking. There was no access from the trailer park to San Ysidro Boulevard across parcel 4 or 9; rather, access to the trailer park was on a side road. At the time of the condemnation, defendants had leased parcels 4 and 9 to persons who ran businesses in small sheds or temporary structures on the lots, including an insurance business, a currency exchange business, and a used car lot.

Plaintiff, the City of San Diego (hereafter City), brought actions to condemn a strip of land for the purpose of broadening San Ysidro Boulevard. The strip to be condemned included defendants' parcels 4 and 9. The actions were consolidated, and the issues of plaintiff's right to take the land and of valuation were bifurcated. Plaintiff prevailed on the right-to-take issue.

Before trial commenced on the issue of valuation, plaintiff moved to preclude defendants from presenting evidence that the two parcels taken were part of a larger parcel that included the trailer park (lots 19 and 23). Defendants sought to show that lots 19 and 23, considered in conjunction with parcels 4 and 9, were suitable for commercial development, and particularly for use as a shopping center because parcels 4 and 9 provided a means of direct access to lots 19 and 23 from a major thoroughfare, San Ysidro Boulevard. The loss of parcels 4 and 9 through condemnation, therefore, would damage the value of the remaining lots 19 and 23. Defendants had no plan to undertake this future commercial development themselves, but hoped instead to sell the entire property to a developer. No sale

was imminent. The court determined that defendants were not entitled to severance damages for lots 19 and 23 because there was no present unity of use between those lots and the land that was taken. Defendants argued that potential future unity of use between the land taken and the remainder should be sufficient to show entitlement to severance damages. The court rejected defendants' contention and granted plaintiff's motion. The trial as to valuation proceeded, and a jury awarded $164,110 for the two condemned parcels.

Defendants appealed, claiming entitlement to severance damages as to lots 19 and 23. The Court of Appeal reversed, holding that "if the landowner establishes there is a reasonable probability all of his contiguous commonly owned lots will be available for development or use as an integrated economic unit in the reasonably near future, all of the separate lots may be collectively considered as a larger parcel for the purpose of determining the just compensation for the property taken." The Court of Appeal directed the trial court to reconsider whether defendants' property was a single, larger parcel under this definition. We granted the City's petition for review.

## DISCUSSION

Article I, section 19, of the California Constitution requires that the owner whose private property is taken or damaged for a public use be paid just compensation. The federal Constitution similarly provides that private property not be taken for public use without just compensation. (U.S. Const., 5th Amend.) What comprises just compensation has necessarily been the subject of both judicial and legislative activity because "[t]he value of property springs from subjective needs and attitudes; its value to the owner may therefore differ widely from its value to the taker." (*Kimball Laundry Co.* v. *United States* (1949) 338 U.S. 1, 5 [93 L.Ed. 1765, 1771-1772, 69 S.Ct. 1434, 7 A.L.R.2d 1280]; see also *S.F., A & S. R.R. Co.* v. *Caldwell* (1866) 31 Cal. 367, 374-375 ["[w]hat shall be the measure of compensation to the owner of land taken for public use, is involved in considerable confusion in the decisions of Courts on the subject."].) As the United States Supreme Court has recognized, however, most property is subject to a general demand that gives it "a value transferable from one owner to another. As opposed to such personal and variant standards as value to the particular owner whose property has been taken, this transferable value has an external validity which makes it a fair measure of public obligation to compensate the loss incurred by an owner as a result of the taking of his property for public use. In view, however, of the liability of all property to condemnation for the common good, loss to the owner of nontransferable values deriving from his unique need for property or idiosyncratic attachment to it, like loss due to an

exercise of the police power, is properly treated as part of the burden of common citizenship." (*Kimball Laundry Co.* v. *United States, supra,* 338 U.S. at p. 5 [93 L.Ed. at pp. 1771-1772].)

In striking this balance between the public's need and the owner's loss, our Legislature has provided that the measure of compensation for property taken pursuant to the government's powers of eminent domain is its "fair market value." (Code Civ. Proc., § 1263.310.)[1] It has defined "fair market value" as "the highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no particular or urgent necessity for so doing, nor obliged to sell, and a buyer, being ready, willing, and able to buy but under no particular necessity for so doing, *each dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available.*" (§ 1263.320, italics added.)

■ As section 1263.320 indicates, the fair market value of property taken has not been limited to the value of the property as used at the time of the taking, but has long taken into account the "highest and most profitable use to which the property might be put in the reasonably near future, to the extent that the probability of such a prospective use affects the market value." (*People* ex rel. *State Public Works Bd.* v. *Talleur* (1978) 79 Cal.App.3d 690, 695 [145 Cal.Rptr. 150]; *Redevelopment Agency* v. *Contra Costa Theatre, Inc.* (1982) 135 Cal.App.3d 73, 83 [185 Cal.Rptr. 159]; see also *People* v. *Ocean Shore Railroad* (1948) 32 Cal.2d 406, 425-426 [196 P.2d 570, 6 A.L.R.2d 1179] [hereafter *Ocean Shore*] ["the highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not as the measure of value, but to the extent that the prospect of such use affects the market value of the land . . . ."].) This same principle of valuation of applies when the government takes more than one parcel: "[W]here the highest and best use of separate parcels will involve their integrated unitary use, such prospective use may be considered in fixing the value of the property taken if a joinder of the parcels is reasonably practicable . . . ." (*Ocean Shore, supra,* at p. 424.)

■ Under both the federal and state Constitutions, however, just compensation consists not only in an award of the value of the property that has been taken, but also of an award to compensate the owner for damage caused by the taking to the property that remains. (Cal. Const., art. I, § 19 ["Private property may be taken or *damaged* for public use only when just compensation . . . has first been paid . . . ." (Italics added.)]; *Sharp* v. *United States* (1903) 191 U.S. 341, 351-352 [48 L.Ed. 211, 214-215, 24 S.Ct. 114].)

---

[1]All further unlabeled statutory references are to this code.

Therefore, as we recognized in *City of Los Angeles* v. *Wolfe* (1971) 6 Cal.3d 326, 330 [99 Cal.Rptr. 21, 491 P.2d 813], while the Legislature has addressed the question of entitlement to and valuation of severance damages, these questions are of constitutional import as well.

When "the property acquired [by eminent domain] is part of a larger parcel," in addition to compensation for the property actually taken, the property owner must be compensated for the injury, if any, to the land that he retains. (§ 1263.410.)[2] ■ Once it is determined that the owner is entitled to severance damages, they, too, normally are measured by comparing the fair market value of the remainder before and after the taking. (*Sacramento etc. R.R. Co.* v. *Heilbron* (1909) 156 Cal. 408, 414 [104 P. 979]; *County of Santa Clara* v. *Curtner* (1966) 245 Cal.App.2d 730, 743 [54 Cal.Rptr. 257]; see 8 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 1027, p. 593.)

Because severance damages are intended to compensate the property owner for the destruction of the integrity of his land (see *Sharp* v. *United States, supra,* 191 U.S. at p. 354 [48 L.Ed. at pp. 215-216]), the property owner must be able to demonstrate both how his property functions as an integrated unit and how the value of what remains has been injured by the taking of a part. In the case of a single parcel of property devoted to a unitary use, the impairment is usually self-evident: in the case of a dairy farm, for example, if all the pasturage is condemned, the value of what remains may be significantly impaired. When, however, more than one parcel is at issue, the manner in which the parcels form a unified whole may not be immediately apparent.

The Legislature has framed the question of whether property should be viewed as an integrated whole in terms of whether the land remaining after the taking forms part of a "larger parcel" (§ 1263.410, subd. (a)); the issue is one of law for decision by the court. (*Oakland* v. *Pacific Coast Lumber etc. Co.* (1915) 171 Cal. 392, 397-398 [153 P. 705]; *People* ex rel. *Dept. Public Works* v. *Fair* (1964) 229 Cal.App.2d 801, 804 [40 Cal.Rptr. 644].)

Traditionally, three requirements must be met to establish that the land remaining to the owner after condemnation is part of a "larger parcel": (1) unity of title; (2) contiguity of the parcels; and (3) unity of use. (*Sharp* v. *United States, supra,* 191 U.S. at pp. 354-356 [48 L.Ed. at pp. 215-216]; *City*

---

[2]Section 1263.410 provides in pertinent part: "(a) Where the property acquired is part of a larger parcel, in addition to the compensation awarded pursuant to Article 4 (commencing with Section 1263.310) for the part taken, compensation shall be awarded for the injury, if any, to the remainder."

*of Los Angeles* v. *Wolfe, supra,* 6 Cal.3d at p. 330, and cases cited; *Oakland* v. *Pacific Coast Lumber etc. Co., supra,* 171 Cal. at p. 398; *People* ex rel. *Dept. Public Works* v. *Fair, supra,* 229 Cal.App.2d at p. 804; see Note, *Landlord and Tenant and Severance Damages in Street Widening Cases* (1929) 18 Cal.L.Rev. 31, 32; 8 Witkin, Summary of Cal. Law, *supra,* Constitutional Law, § 1023, p. 590; 4A Nichols on Eminent Domain (3d ed. 1969) § 14B.03[1].)

■■■ Neither unity of title nor contiguity is in issue here: all of the lots in question (5, 6, 17, 19, and 23) are owned by defendants, and all are contiguous. The issue, rather, is whether there exists such unity of use between the five lots that they should be considered as a "larger parcel." If they can be so considered, defendants should then be entitled to submit evidence of the damage sustained by the remainder (lots 19 and 23) as a result of the taking of lots 5, 6, and 17. The City argues that only the present and existing uses of the separate lots may be considered in determining whether unity of use exists; under this theory, the diversity of the existing uses would preclude a finding of a larger parcel. Defendants contend, however, that the present and existing uses of the property should not be dispositive, and that the highest and best use of the property—including those uses to which the property might be put in the reasonably foreseeable future—should be considered in determining whether the unity of use exists.

Unlike the dissent, we are not persuaded that California authorities preclude us from considering the defendants' position.

A review of the case law reveals that our courts have not always insisted on strict application of the three unities in order to conclude that a "larger parcel" exists.[3] For example, while a strict construction of the requirement of unity of title would require the same person to have fee ownership of both the taken and remaining property, in *City of Stockton* v. *Ellingwood* (1929) 96 Cal.App. 708, 745 [275 P. 228], the Court of Appeal found that contiguous but separate parcels of property held by different owners could be considered as a larger parcel because the property was held and operated by a partnership comprised of the property owners. And, in *People* ex rel. *Dept.*

---

[3] The Law Revision Commission's comment to section 1263.410 states that the definition of "larger parcel" is subject to development by the courts: "It should be noted that the term 'larger parcel' is not defined in the Eminent Domain Law, just as it was not defined in the former eminent domain provisions of the Code of Civil Procedure. The legal definition of the larger parcel is in the process of judicial development. See, e.g., City of Los Angeles v. Wolfe, 6 Cal.3d 326, 491 P.2d 813, 99 Cal. Rptr. 21 (1971) (contiguity not essential). Leaving the larger parcel definition uncodified permits continued judicial development of the concept." (Cal. Law Revision Com. com., 19A West's Ann. Code Civ. Proc., § 1263.410 (1982 ed.), p. 65.)

*Pub. Wks.* v. *Nyrin* (1967) 256 Cal.App.2d 288, 295 [63 Cal.Rptr. 905], the Court of Appeal stated as a general rule: " '[T]he fact that several tracts are owned by different persons does not preclude them from being regarded as one where they are contiguous and are used in common by the owners under a contract or other arrangement and each tract is more valuable by reason of that use than if used separately.' " (See also *County of Santa Clara* v. *Curtner* (1966) 245 Cal.App.2d 730, 737 [54 Cal.Rptr. 257] [owners of remaining parcel held equitable title to condemned parcel following their exercise of an option to purchase].)

Our insistence on contiguity has been similarly flexible. We found the lack of contiguity fatal to an award of severance damages in *Oakland* v. *Pacific Coast Lumber etc. Co.*, *supra*, 171 Cal. 392 (mill property separated from lumberyard by several blocks), and in *Ocean Shore*, *supra*, 32 Cal.2d 406, 423, repeated our conclusion that contiguity is "ordinarily essential" to an award of severance damages. We relaxed the requirement in *City of Los Angeles* v. *Wolfe*, *supra*, 6 Cal.3d 326, and permitted severance damages despite the fact that the parcel taken was not physically contiguous with the remainder; we characterized the relationship between the two parcels, which was really one of interdependence of use, as "constructive" or "legal" contiguity. We stated: "Exceptions have been recognized . . . to the rule of strict physical contiguity w[h]ere the factual situation was found to warrant such an exception." (*City of Los Angeles* v. *Wolfe*, *supra*, 6 Cal.3d at p. 338.)

The City argues, however, that our authorities do not permit such flexibility in the construction of the unity of use, and that only present and existing uses may be considered in examining the unity of use. We acknowledge that there exist numerous cases that set forth a rule purporting to require that only the "actual" use be considered in determining unity of use; as we demonstrate below, however, these cases often merely recite the generally recognized rule in the course of determining issues either not involving the unity of use at all or not involving prospective use. Accordingly, we do not find them dispositive of this case. Giving these cases a more critical reading, we conclude that their emphasis on the present use of the property was intended to avoid awards of speculative damages.

As early as 1866, this court cautioned against awarding speculative severance damages. We recognized that the exercise of the power of eminent domain may cause compensable damage to the landowner's remaining adjacent land, and that "[w]hat shall be the measure of compensation to the owner of land taken for public use, is involved in considerable confusion in the decisions of Courts on the subject." (*S.F., A. & S. R.R. Co.* v. *Caldwell*, *supra*, 31 Cal. 367, 374-375.) ■ We warned, however, that the measure

of damages should not include "conjectural or speculative estimations of consequential damages or benefits." (*Id.* at p. 375.)

We returned to the problem of severance damages in 1909 in *Sacramento etc. R.R. Co.* v. *Heilbron, supra,* 156 Cal. 408. A railroad company condemned a portion of a parcel of property and the owner sought severance damages for the remainder. In seeking to establish the value of the portion remaining, he attempted to introduce "evidence as to the price which he thought would be paid for the land by one desiring it for nursery purposes . . . ." (*Id.* at p. 415.) The evidence was ruled inadmissible. We affirmed the ruling: "It was not even contended that [the owner] qualified himself to testify as to the market value, and his testimony amounted to no more than that the land was suitable for nursery purposes, and that for such purposes a purchaser could be found who would pay so much per acre. Here is an excellent view of the domain of speculation which is opened by the introduction of testimony such as this. The next witness might in turn testify that he believed the land valuable for oil and worth, therefore, for that purpose, thousands of dollars per acre. A third witness might find a similar special use and value for townsite purposes and declare his opinion of the value per acre based upon this consideration." (*Ibid.*)

We returned to the problem of severance damages again in 1915. The City of Oakland condemned wharf property leased to the defendant lumber company and used as a lumberyard. The defendant sought severance damages for the injuries to its lumber mill on a noncontiguous parcel of property several blocks away; it suggested that we adopt a more liberal definition of the term "larger parcel," one in which unity of use controls over contiguity. We rejected the suggestion that we should consider the separate parcels as one larger parcel, noting that the loss the defendant sustained as the result of the taking of the wharf property was not damage to the realty itself, but rather damage to the defendant's business. We concluded that former section 1248 (the predecessor of current § 1263.410) "limits in terms the award of damages to the *property taken* and the resultant damages to contiguous *property* injured by the severance of the property taken. It of course has not the most remote applicability to the business, profession, or occupation which may be conducted upon the property." (*Oakland* v. *Pacific Coast Lumber etc. Co., supra,* 171 Cal. 392, 399, italics in original.) Addressing the problem of valuing property subject to condemnation generally, and not the specific problem of severance damages (as those were not awarded), we warned against the introduction of evidence of value derived from speculation as to the various uses to which the property might be put.

These cases may remind us of our historical and well-founded antipathy to speculative damages, but none of them actually addresses the issue we

confront in this case: whether we must *always* reject evidence of prospective use as generative of speculative damages, or whether there are circumstances under which proposed uses may have an actual effect on present value. We find a similar flaw in the case that is often cited as the source, at least in our state, for the rule that it is the actual use made of the property that controls: the property owner simply did not contend that the future uses of the parcels involved were relevant to an award of severance damages. (*City of Stockton v. Marengo* (1934) 137 Cal.App. 760 [31 P.2d 467].)

In *City of Stockton* v. *Marengo, supra,* 137 Cal.App. 760, the Court of Appeal found that the present diverse uses of a tract of land precluded an award of severance damages. The city condemned a portion of a tract of land owned by defendants and used for farming. The defendants sought severance damages for the remaining property, part of which was used for farming and part of which was used as a gas station. The Court of Appeal found that severance damages were appropriate for the property remaining that had been devoted to farming purposes because that property may be deemed to be a single parcel with that of the property condemned, but that severance damages for the gas station property were improper: "The gas station property was separated from the balance of the tract by a fence. It was set apart from the tract to be used exclusively for the operation of another business. It had been actually used for several years for operating a gas station business. It was under an eight-year lease to a stranger to this litigation." (*Id.* at p. 767.)

As we noted above, it is to *City of Stockton* v. *Marengo, supra,* 137 Cal.App. 760, that we trace the first appearance of the generally accepted "rule" upon which the city relies: " 'To constitute a unity of property between two or more contiguous but *prima facie* distinct parcels of land, there must be such a connection or relation of adaptation, convenience, and *actual and permanent use* as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcels left, in the most advantageous and profitable manner in the business for which they are used . . . .' " (*Id.* at p. 766, italics added.) This "rule" has been repeated in subsequent cases to support the proposition that "actual" unity of use is required. (See, e.g., *People* ex rel. *Dept. Pub. Wks.* v. *International Tel. & Tel. Corp.* (1972) 22 Cal.App.3d 829, 834-835 [99 Cal.Rptr. 836]; *People* ex rel. *Dept. Pub. Wks.* v. *Nyrin, supra,* 256 Cal.App.2d 288, 294; *City of Menlo Park* v. *Artino* (1957) 151 Cal.App.2d 261, 270 [311 P.2d 135]; see also *City of Los Angeles* v. *Wolfe, supra,* 6 Cal.3d at p. 335.)

The City relies on *City of Stockton* v. *Marengo* to support its conclusion that only the present uses of the property may be considered in determining

whether unity of use exists. City extracts from the case, however, more than it actually contains; it stands for the narrow proposition that the uses to which the property was presently being put precluded a finding of a "larger parcel" that included the gas station. The conclusion that the present uses in *that case* precluded a finding of a "larger parcel" does not lead to the conclusion that the present use, and only the present use, may be considered in determining whether in *another case* a unity of use may exist. In *City of Stockton* v. *Marengo, supra*, 37 Cal.App. 760, the defendants were not arguing that other uses—whether future or past—should be considered in determining unity of use.

Nor do we find in *People* v. *Thompson* (1954) 43 Cal.2d 13 [271 P.2d 507] any support for the proposition that we may never consider reasonably probable future uses of the property in determining whether a larger parcel exists. The state condemned a strip of defendant's property for use as a freeway, leaving beach property to the west of the condemned land and to the east, property used for farming and property that consisted of swamps "used" only for the display of billboards. The People contended that severance damages were permissible only if the remainder were used for "one general purpose," and that because part of the property was used for farming, part simply for the display of signboards, and part as a beach, defendants had failed to demonstrate their entitlement to such damages. We rejected the People's contention, distinguishing this case from *City of Stockton* v. *Marengo* on the ground that in *Marengo*, the uses to which the property was put were affirmatively diverse, while here there was "simply a failure to use some of the property." (*Id.* at p. 26.) We found that "[u]nder the circumstances of this case there appears to have been no error in the view that the property could and should be considered as one parcel." (*Ibid.*)

*City of Menlo Park* v. *Artino, supra*, 151 Cal.App.2d 261, appears to be the first case in which a property owner attempted to introduce evidence of the uses to which the property might be put in the future to establish entitlement to severance damages. While the property owners in that case were unsuccessful in securing severance damages, their lack of success under the facts of that case should not prove dispositive here.

The City of Menlo Park condemned property belonging to defendants David and Emilia Garibaldi; unidentified members of the Garibaldi family owned two contiguous lots, each of which had been developed with a separate residence. The Garibaldis argued that they were entitled to severance damages for the "destruction of the unitary value of the two lots not taken . . . , based upon the reasonable probability of the combined use of all three lots in the near future for commercial purposes." (*City of Menlo*

*Park* v. *Artino, supra*, 151 Cal.App.2d at p. 269.) Their expert witness testified that the Garibaldis' three lots "were the only piece of land of that size left on Menlo Avenue under one ownership and not commercially improved." (*Ibid.*) The Court of Appeal rejected defendants' contention, voicing its agreement with the city that "the unity of use asserted by the [Garibaldis] is prospective only . . . ." (*Id.* at p. 270.) The court's objection to the evidence of prospective use, however, was premised on its conclusion that any damage award would be speculative: " 'To recover severance damages under section 1248, subdivision 2 [the predecessor to section 1263.410], the loss in market value claimed must directly and proximately flow from the taking. Damage which is speculative, remote, imaginary, contingent, or merely possible . . . cannot serve as a legal basis for recovery.' " (*Ibid.* [quoting from *Arnerich* v. *Almaden Vineyards Corp.* (1942) 52 Cal.App.2d 265, 272 (126 P.2d 121)].) What is more relevant for present purposes, however, is the actual evidence of separate use: "At the time of this action each of the three lots had a separate dwelling on it. In January 1955, about five months before the institution of this proceeding the house on [one of the remaining lots] was moved there from another location and a driveway constructed. There was no evidence introduced which showed any intention to use these three lots in any manner other than as individual rental properties as they were being used." (151 Cal.App.2d at p. 269.)

In *People* ex rel. *Dept. Pub. Wks.* v. *International Tel. & Tel. Corp., supra*, 22 Cal.App.3d 829, the Court of Appeal found that diverse existing uses of contiguous property precluded the two parcels from being aggregated to form a larger parcel for purposes of awarding severance damages. The state had there condemned agricultural property owned by defendant International Telephone & Telegraph Corp. (IT&T) that was contiguous to its industrial plant. IT&T sought severance damages for the property on which its industrial plant was located, arguing that the agricultural property provided a buffer zone that insulated the industrial plant from the noise and contaminants of the adjacent freeway. The Court of Appeal found, as a matter of fact, that there was no interdependence of use between the two parcels that supported the conclusion that they should be viewed as an integrated whole: IT&T only acquired the agricultural parcel after it learned of the proposed condemnation, and its plant had operated for nearly twenty years without owning the parcel. Moreover, the evidence indicated that the agricultural parcel itself created dust that caused the plant trouble. There was no evidence that IT&T relied on any prospective unity of use to support its claim for severance damages.

We find in *City of Los Angeles* v. *Wolfe, supra*, 6 Cal.3d 326, support for the proposition that we neither should, nor historically have, simply adhered

without analysis to the literal language of the so-called unities of title, contiguity and use. The defendant in that case owned an office building which by city ordinance was required to provide parking. The building itself had no parking facilities and the owner had purchased noncontiguous property on which it operated a parking lot. The city condemned the property on which the parking lot was operated and the owner sought severance damages for the injury to the property on which the office building stood. We acknowledged the rule that physical contiguity is generally required for an award of severance damages, but we found that exceptions had developed and that "[e]ach relevant fact must be analyzed and all of the facts considered in order to determine unity in a condemnee's claim for severance damages." (*Id.* at p. 335.) While we did not specifically conclude that severance damages were appropriate in this case, we did conclude that "an 'ordinary' situation within the rule requiring strict contiguity was not presented." (*Id.* at p. 338.) Our conclusion depended, in large part, on the obvious interdependence between the two parcels mandated by the city's zoning ordinances.

Relying on *Ocean Shore, supra,* 32 Cal.2d 406, the dissent maintains that we have already rejected the proposition that prospective unity of use may be relevant in establishing entitlement to severance damages. While we acknowledge that the case makes that statement, we, like the Court of Appeal, have "trouble attributing dispositive significance to it" for several reasons.

The condemnee in *Ocean Shore* owned a railroad right-of-way over a roadbed that extended some 10 miles. The right-of-way was separated at one point by a public park, creating two distinct tracts of land. The state condemned the right-of-way to the north of the public park and the owner sought severance damages for the separate tract of land to the south of the park. The principal issue in the case was whether the owner had any property interest (whether easement or fee) through the public park that would render the two separate tracts of land *contiguous*; the court noted that "it is not disputed that defendant [owner] would be entitled to severance damages if the roadbed were contiguous . . . ." (*Ocean Shore, supra,* 32 Cal.2d at p. 414.) Having failed to establish contiguity, the owner argued, as we ultimately determined in *City of Los Angeles* v. *Wolfe, supra,* 6 Cal.3d 330, that physical contiguity is not necessary if the property is being devoted to an existing unity of use. The owner, however, was not able to show an *existing* unity of use and attempted to argue instead that the two separate tracts could be used as an integrated whole in the future. We rejected the argument: "Under section 1248 of the Code of Civil Procedure, the primary test for severance damages is contiguity, and while an existing unity of use may

warrant an award, none can be allowed where, as here, the property is not contiguous, and there is merely a possible or prospective, and not a presently existing, unity of use." (*Ocean Shore*, *supra*, at p. 424.) Our holding in *Ocean Shore*, therefore, literally precludes examination of prospective use only when the property involved is noncontiguous; as the property involved in this case is contiguous, that holding is not dispositive here.

The dissent relies not on our *holding* in *Ocean Shore*, but rather on the more sweeping statements we made in the discussion that led to our conclusion: "There are cases which hold that, where the highest and best use of separate parcels will involve their integrated unitary use, such prospective use may be considered in fixing the value of the property taken if a joinder of the parcels is reasonably practicable, and the nature of the case does not preclude the possibility of a union without the exercise of eminent domain. [Citations.] That rule, however, has no application to the allowance of severance damages. The possibility of joinder of parcels for a specified use is a factor that might be weighed by a prospective purchaser, if the joinder were reasonably practicable, and hence is an element to be considered in determining the value of the property taken, but it has no bearing on the allowance of severance damages." (*Ocean Shore*, *supra*, 32 Cal.2d 406, 424.)

*Ocean Shore* cited no authority for its conclusion that prospective unity of use had no bearing on the allowance of severance damages, and to our knowledge, the statement has not been relied on since it was made; *City of Menlo Park* v. *Artino*, *supra*, 151 Cal.App.2d 261, is the one case that we have found that actually considers whether prospective unity of use warrants an award of severance damages, and that case does not cite *Ocean Shore* as precluding such damages.

In summary, we find that existing California authorities do not preclude us from considering whether severance damages may be awarded based on a prospective integrated use of several parcels. The question, rather, is whether considering the prospective uses to which several parcels of contiguous property might be put furthers our obligation to ensure that a property owner receives just compensation for the government's condemnation of his property, and whether, as has concerned us in the past, such a consideration opens the door to speculative damage awards.

Although it is not critical to our conclusion, we note that other jurisdictions, the Model Eminent Domain Code, and certain commentators have either adopted or espoused the position that we adopt today. Although in not all cases do the authors set forth their reasoning, in those in which the reasoning is explicit, it is consistent with ours: as a matter of economic

reality, the development potential of contiguous properties in common ownership endowed them with a value, considered as a whole, greater than the sum of their parts. Hence, in *In re Elgart's Appeal* (1959) 395 Pa. 343 [149 A.2d 641], the court noted that while a unity of existing use was a proper limitation in cases involving an award of severance damages for noncontiguous parcels, an insistence on unity of use should not be extended to those cases involving contiguous parcels. The court reasoned that it was the economic reality of land ownership and development that contiguous parcels, although not currently linked with existing improvements, had value to developers greater than merely the sum of their parts: An additional increment of value inhered in having a larger parcel available to develop as a larger unit. Because condemnation deprived the owner of both the taken land and the increment of added value to the untaken land, the owner should be compensated for both.

Although finding the circumstances in the case insufficient to support a finding of a larger parcel based on prospective use, the court in *United States v. Mattox* (4th Cir. 1976) 375 F.2d 461 acknowledged that tracts of land adjoining each other and available for integrated use had, taken as a whole, an incremental value greater than each tract valued separately; the court noted that severance damages, while not appropriate in that case, might be permissible if there were a "reasonable probability that the separate tracts would have been combined for such integrated use." (*Id.* at p. 463.) Other state and federal courts have reached the same conclusion. (See, e.g., New Jersey, *State, Com'r. of Transp.* v. *Bakers Basin Rlty. Co.* (1975) 138 N.J.Super. 33 [350 A.2d 236]; Pennsylvania, *Com., Dept. of General Services* v. *Fake* (1979) 45 Pa.Commw. 46 [405 A.2d 971]; Massachusetts, *Valley Paper Company* v. *Holyoke Housing Authority* (1963) 346 Mass. 561 [194 N.E.2d 700]; North Carolina, *Barnes* v. *North Carolina State Highway Commission* (1959) 250 N.C. 378 [109 S.E.2d 219]; and the Fourth Circuit, *United States* v. *Certain Parcels of Land, etc.* (4th Cir. 1967) 384 F.2d 677 [allowed severance damages when prospective highest use of the property was development as a single unit].)

The Uniform Eminent Domain Code[4] permits severance damages under more liberal standards than we adopt, as it eliminates the requirement of contiguity when the unity of use is premised on prospective use: "For purposes of determining compensation under this Article, all parcels of real

---

[4]The Uniform Eminent Domain Code, which was first approved by the National Conference of Commissioners on Uniform State Laws in 1974, has been adopted by only one state, Alabama, and was reclassified in 1984 as a "Model Code." Its redesignation as a model code signifies, inter alia, that while uniformity may be a desirable objective, it may not be one that is achievable. (Nat. Conf. of Comrs. on Uniform State Laws, 1991-1992 Reference Book; see also discussion in 4A Nichols on Eminent Domain, *supra*, § 14.03, p. 14-44.)

property, whether contiguous or noncontiguous, that are in substantially identical ownership and are being used, or are reasonably suitable and available for use in the reasonably foreseeable future, for their highest and best use as an integrated economic unit, shall be treated as if the entire property constitutes a single parcel." (U. Eminent Domain Code, § 1007.)

Nichols on Eminent Domain, an accepted and comprehensive treatise, consistently offers "reasonably prospective use" as a means of satisfying the requirement that unity of use exist for an award of severance damages: "Because the actual or reasonably prospective use of the property as a unity of economic value is the prime touchstone for connecting otherwise separate parcels into a single entity for purposes of establishing damage to the remainder, it will be dealt with first. This is not to imply that unity of ownership or physical contiguity . . . are not relevant or frequently controlling but to recognize that the true economic facts of the marketplace are most likely to convince a trier of fact that damage has occurred. Absent unity of present use or reasonably probable future use, the ultimate burden of persuasion will not be met." (4A Nichols on Eminent Domain, *supra*, § 14B.03[2], pp. 14B-14, 14B-15; see also discussion, *id.*, § 14B.03[2], at pp. 14B-15 through 14B-16; and *id.*, § 14B.03[4][b], pp. 14B-21 through 14B-22.)

Acknowledging that a split of authority exists, one writer has posited that "the more widespread and predominant view is to the effect that land which is not, at the time of condemnation, put to a unified use, may nevertheless be treated as a unit . . . where the property owner shows an intended unifying use of the property, where the property is reasonably adaptable to such use within the immediate future, or within a reasonable period of time, such as to affect the market value of the property." (See Annot., Eminent Domain: Unity or Contiguity of Separate Properties Sufficient to Allow Damages for Diminished Value of Parcel Remaining After Taking of Other Parcel (1988) 59 A.L.R.4th 308, 326-327.)

We return, then, to our original assumption that severance damages compensate the property owner for the government's impairment of the integrity of his property, as reflected in the diminution in value of what remains after the taking. The property owners here contend that the configuration of their separate parcels, before the taking, gave the property as a whole certain value because of its potential for development as a shopping center; they also contend that the City's condemnation of the parcels abutting San Ysidro Boulevard destroyed that unique value by removing a means of access to a major thoroughfare. The property that remains still has potential for development as a shopping center, but may fetch less in the market because it is less advantageously configured than it was before the taking.

We have long recognized that future use may affect the present value of real property. In setting just compensation for property that the government has actually taken, we have stated that the "highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not as the measure of value, but to the extent that the prospect of such use affects the market value of the land." (*Ocean Shore, supra*, 32 Cal.2d 406, 425-426.) The statutory definition of "fair market value" itself acknowledges the effects of future use on present value: "The fair market value of the property taken is the highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no particular or urgent necessity for so doing, nor obliged to sell, and a buyer, being ready, willing, and able to buy but under no particular necessity for so doing, *each dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available.*" (§ 1263.320, subd. (a), italics added.)

■ Our recognition that the present value of property may reflect its development potential is nothing more than an acknowledgement of the realities of the marketplace. Those realities suggest that we acknowledge an economic fact: that contiguous property held in common ownership but devoted to separate uses may nonetheless be valued *by the market* for an integrated use. When the government impairs that integrated use by taking some of the property, the property remaining declines in value, and the owner, under the constitutional guarantee of just compensation, should be compensated for that injury. The diminution in value for which compensation is compelled is not speculative, but rather actual: Before the taking, the development potential of the separate parcels considered as a whole added to their collective present value; the taking of part diminishes the present value of what remains.

The critical inquiry in any case in which a property owner seeks severance damages premised on a prospective unity of use will therefore be whether the development potential of the separate but contiguous parcels affected their present value. As a matter of economic reality, only those uses that are reasonably probable and reasonably achievable will affect present value. We therefore hold that if the landowner establishes that there is a reasonable probability his contiguous commonly owned lots are or will be available for development or use as an integrated economic unit in the reasonably foreseeable future, all of the separate lots may be considered as a larger parcel for purposes of awarding severance damages.

By anchoring a landowner's entitlement to severance damages based on a proposed unity of use to the reasonable probability of such use in the

reasonably foreseeable future, we ensure that we compensate the landowner for the value the market places on the property, rather than its value to him alone. The property owner's intended unified use of the separate parcels, standing alone, is insufficient to establish the "larger parcel" that is prerequisite to his proof of injury; rather, he must also demonstrate that his intended use is reasonably probable in the reasonably foreseeable future. The facts relevant to the proof of these conditions will undoubtedly vary with the circumstances of each case, but we anticipate that they will typically include, among other things, evidence of the existing uses of the property, the time and expense necessary for their termination, the physical adaptability of the property for use as an integrated whole, the existing and the proposed zoning applicable to the several parcels in question, local market conditions, the local regulatory climate, and the property owner's plans for development. These are indeed factual issues, but whether, taken as a whole, they support a finding that a larger parcel exists remains an issue of law to be decided by the trial court. (*Oakland* v. *Pacific Coast Lumber etc. Co.*, *supra*, 171 Cal. at pp. 397-398.)

Finally, we address the criticism of the dissent: that we have confused the measurement of severance damages with entitlement to them in the first place. We do not agree that the two concepts are so easily separable. Proof of the injury, that is, the diminution in value of parcels contiguous to those taken, may be the best evidence that those parcels formed part of an integrated whole.

## Conclusion

If a property owner establishes that there is a reasonable probability his contiguous commonly owned lots are or will be available for development or use as an integrated economic unit in the reasonably foreseeable future, all of the separate lots may be considered as a larger parcel for the purpose of considering whether severance damages are appropriate. Because the trial court here concluded that only the present use of the property was relevant in determining entitlement to severance damages, it did not consider whether the reasonably probable uses of the property in the reasonably foreseeable future demonstrated the existence of a larger parcel. The case must therefore be remanded for retrial on this issue.

## Disposition

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Baxter, J., and George, J., concurred.

**MOSK, J.—**

I

I dissent.

The majority engage in hand-to-hand combat with California case law on severance damages, and by assiduously distinguishing cases on their facts, dismissing language as unfortunately broad, and questioning whether earlier opinions really meant what they said, arrive at the doubtful conclusion that the rule they adopt is not precluded by precedent. Startling by its absence is reference to any California authority that actually supports the rule adopted by the majority, that is, that mere potential future unity of use may be the basis for a claim of severance damages.

My own contrary view depends not only on an examination of the California case law regarding the precise issue presented, but also on a consideration whether the rule adopted by the majority is reasonable and just in the broader context of the law of eminent domain. That law seeks to accommodate a tension between the right of the state, necessary to government and community life itself, to condemn property for public use, and the right of the individual landowner to be compensated when the state appropriates his or her land. A rule that permits the landowner who *retains* his or her land to claim entitlement to compensation because of a thwarted plan to speculate in the real estate market fails to achieve equilibrium between public and private interests.

Defendants do not claim any present damage to the remainder in this case. They can use their remaining land precisely as they have always done. Instead, they want the government, with its deep pocket, to be the guarantor that they will realize the opportunity, but face none of the risk of the market. They want the government to pay them for what the market for developed property would pay for land they still own, even though they have taken no risk in seeking to develop their land and have no firm plans to do so. The balance of interests required by the law of eminent domain, to say nothing of the real estate market, is disturbed when we require compensation for such a speculative claim from the government—read: taxpayers.

Furthermore, the majority fails to provide a clear rule in an area of law in which clarity and predictability are particularly important. Rather, it provides a loose standard that will permit, and indeed encourage speculative claims of damage. A standard that awards compensation for an "intended use [that] is reasonably probable in the reasonably foreseeable future" (maj.

opn., *ante*, at p. 757) provides neither property owners nor government bodies responsible for urban planning sufficient guidance to make rational economic choices.

## II

California law securely establishes that present unity of use is a prerequisite to any claim of entitlement to severance damages.

Severance damages are to be awarded when the land taken by a public entity is part of a larger parcel or tract, and the land remaining to the owner has been damaged by the condemnation. (*Sharp* v. *United States* (1903) 191 U.S. 341, 352 [48 L.Ed. 211, 215, 24 S.Ct. 114] [hereafter *Sharp*]; 8 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 1022 et seq.; 4A Nichols on Eminent Domain (3d ed. 1969) § 14B.02.)

Severance damages are intended to compensate the owner for diminution in the value of his or her remaining land that is caused by a condemnation that destroys the *integrity* of a unified parcel or tract of land. (*Sharp*, *supra*, 191 U.S. at p. 354 [48 L.Ed. at pp. 215-216].) The basic concern to compensate for the destruction of the integrity of a parcel of land produced the traditional rule that damage to the remainder is compensable if there is unity of title, unity of use, and, ordinarily, contiguity between the taken property and the remainder. (*Sharp*, *supra*, 191 U.S. at pp. 354-356 [48 L.Ed. at pp. 215-216]; *United States* v. *57.09 Acres of Land* (9th Cir. 1983) 706 F.2d 280, 281, and cases cited; *City of Los Angeles* v. *Wolfe* (1971) 6 Cal.3d 326, 330 [99 Cal.Rptr. 21, 491 P.2d 813], and cases cited; *Hemmerling* v. *Tomlev, Inc.* (1967) 67 Cal.2d 572, 577 [63 Cal.Rptr. 1, 432 P.2d 697]; *Oakland* v. *Pacific Coast Lumber etc. Co.* (1915) 171 Cal. 392, 398 [153 P. 705]; *People* ex rel. *Dept. Public Works* v. *Fair* (1964) 229 Cal.App.2d 801, 804 [40 Cal.Rptr. 644]; see Note, *Landlord and Tenant and Severance Damages in Street Widening Cases* (1929) 18 Cal.L.Rev. 31, 32; 8 Witkin, Summary of Cal. Law, Constitutional Law, *supra*, § 1023, p. 590; 4A Nichols on Eminent Domain, *supra*, § 14B.03[1].) Common ownership alone, then, is not enough to entitle the owner to severance damages. (*Railway Co.* v. *Southern Pac. Co.* (1936) 13 Cal.App.2d 505, 520-521 [57 P.2d 575].)

Code of Civil Procedure section 1263.410,[1] regulating the award of severance damages in this state, requires that when "the property acquired [by eminent domain] is part of a larger parcel," in addition to compensation for the property actually taken, the owner must be compensated for the

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

injury to the land he or she retains. Contrary to the claim of the majority, California cases establish that the "larger parcel" referred to in this section is defined at the time of the taking; potential future unity of use cannot be relied upon to establish that condemning part of a larger parcel has damaged the remainder.

We have consistently cautioned that severance damages are not to be based upon speculation regarding the future. In a case decided in 1866, we recognized that the exercise of the power of eminent domain may cause compensable damage to the landowner's remaining adjacent land, and that, unfortunately, "[w]hat shall be the measure of compensation to the owner of land taken for public use, is involved in considerable confusion in the decisions of Courts on the subject." (*S.F., A & S. R.R. Co.* v. *Caldwell* (1866) 31 Cal. 367, 374-375.) We warned, however, that the measure of damages should not include "conjectural or *speculative* estimations of consequential damages or benefits." (*Id.* at p. 375, italics added.)

In 1915 we cautioned against taking an expansive view of severance damages, declaring that it is only when the "take" is truly part of a larger parcel that severance damages may be awarded for the remainder. (*Oakland* v. *Pacific Coast Lumber etc. Co., supra*, 171 Cal. at p. 398.) In that case, the remainder was not actually contiguous with the taken parcel, being a lumber mill separated by several hundred feet from the wharf and lumberyard property that was condemned. Although there was clearly unity of use between the two properties, as the lumberyard and wharf served the mill, we rejected a liberal interpretation of the concept of "larger parcel" as used in former section 1248 (the predecessor of current § 1263.410). We concluded that to indulge in such a construction would end in allowing compensation for business losses caused by condemnation, rather than loss to the value of the real property. (*Oakland* v. *Pacific Coast Lumber etc. Co., supra*, 171 Cal. at pp. 398-399.)

We warned against the introduction of evidence of speculative severance damages again, cautioning in colorful terms that if such evidence were permitted, "it would be quite permissible for the witnesses to say, 'if oil were discovered upon the land it would be worth twenty thousand dollars an acre,' 'if a gold mine were discovered upon it it would be worth ten thousand dollars an acre,' 'if a man wanted to buy it and establish a town site it would be worth three thousand dollars an acre,' and so on, until such inquiry in a condemnation suit would bear a close affinity to Lord Dundreary's famous question, 'If you had a brother would he like cheese?' " (*Oakland* v. *Pacific Coast Lumber etc. Co., supra*, 171 Cal. at p. 400.)

Lower courts have gone beyond cautioning about speculative claims and expressed the view that severance damages are limited to land put to a

current unified use. In the much cited case of *City of Stockton* v. *Marengo* (1934) 137 Cal.App. 760 [31 P.2d 467], the Court of Appeal refused to allow severance damages for land used for a gas station because the rest of the parcel had consistently been used for farming. The court explained that " '[t]o constitute a unity of property between two or more contiguous but prima facie distinct [that is, subdivided] parcels of land, there must be such a connection or relation of adaptation, convenience and *actual* and *permanent* use as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcels left, in the most advantageous and profitable manner in the business for which they are used.' " (*Id.* at p. 766, italics added and deleted.) Because the two uses were separate, the remainder was not subject to severance damages when the land was divided by the condemnation of a strip of land for a new road. The language quoted above has frequently been reiterated in later cases, so that our courts have consistently stated that actual unity of use is required. (See, e.g., *People* ex rel. *Dept. Public Works* v. *International Tel. & Tel. Corp.* (1972) 22 Cal.App.3d 829, 834-835 [99 Cal.Rptr. 836]; *People* ex rel. *Dept. Public Works* v. *Nyrin* (1967) 256 Cal.App.2d 288, 294 [63 Cal.Rptr. 905]; *City of Menlo Park* v. *Artino* (1957) 151 Cal.App.2d 261, 270 [311 P.2d 135]; see also *City of Los Angeles* v. *Wolfe, supra,* 3 Cal.3d at p. 335.)[2] The majority concede this litany, but gratuitously claim that these courts simply engaged in a meaningless profession of faith rather than a statement of law.

This court, however, spoke definitively on the subject of future unity of use in *People* v. *Ocean Shore Railroad* (1948) 32 Cal.2d 406, 423 [196 P.2d 570, 6 A.L.R.2d 1179] (hereafter *Ocean Shore*). There we asserted that *present* contiguity and unity of use were both necessary elements for the purpose of establishing entitlement to severance damages. In that case, a defunct railroad company owned two parcels of land separated by a public park. Both parcels, as well as the park, had been used as a roadbed for the company's tracks and train service, though the tracks had been removed many years before the commencement of the condemnation action.

When one of the two parcels was condemned, the railroad company claimed severance damages as to the other, though the two parcels were separated by a public park, across which the railroad at most once had a prescriptive easement that it abandoned when it removed its tracks and rolling stock. The railroad company argued that the whole roadbed was

---

[2]Thus, for example, one court relied upon the above quoted language in rejecting a claim for severance damages to land occupied by an electronics factory when the state condemned contiguous property of the same owner that had been used for farming. "It cannot be said that there was any actual use made of the agricultural parcel that was reasonably and substantially necessary for the operation of an electronics plant." (*People* ex rel. *Dept. Public Works* v. *International Tel. & Tel., supra,* 22 Cal.App.3d at p. 835.)

*susceptible* of a common use, that the parcels separated by the park were therefore unified in use, and that the whole roadbed, though not contiguous, should thus be considered a single parcel for the purpose of severance damages.

We acknowledged that in an exceptional case the requirement of contiguity might be dispensed with if there was an *existing* unity of use. (*Ocean Shore, supra,* 32 Cal.2d at p. 423.) We maintained, however, that the general rule is that severance damages are limited to contiguous property, and rejected the claim that a *prospective* unity of use could establish entitlement to severance damages. "[T]he mere fact that there is a *possible or prospective* use of separate property as a unit, or that they are susceptible to a common use, will not justify the allowance of severance damages." (*Ibid.,* italics added.) That has been the law for more than four decades.

We also acknowledged that when the *condemned* property is valued, its fair market value will take into account the property's highest and best use, including prospective unified use of separate parcels. We sharply distinguished that rule of valuation, however, from the threshold problem of *entitlement* to severance damages.

This distinction between entitlement to severance damages and valuation of the condemned property is, I believe, the key to the disposition of the present case. It is a distinction of which the majority have evidently tired, saying the concepts are not "so easily separable." (Maj. opn., *ante,* at p. 757.) Yet we clearly drew the distinction in *Ocean Shore, supra,* 32 Cal.2d 406. After recognizing the rule of valuation applicable to the condemned property, that is, that "highest and best use" may be measured by a potential joinder of parcels, we explained: "That rule, however, has no application to the allowance of severance damages. The possibility of joinder of parcels for a specified use is a factor that might be weighed by a prospective purchaser, if the joinder were reasonably practicable, and hence is an element to be considered in determining the *value* of the property taken, but it has no bearing on the *allowance* of severance damages. Under section 1248 of the Code of Civil Procedure, the primary test for severance damages is contiguity, and while an existing unity of use may warrant an award, none can be allowed where, as here, the property is not contiguous, and there is *merely a possible or prospective, and not a presently existing, unity of use.*" (*Id.* at p. 424, italics added.)

Thus, we clearly stated that the question of highest and best use is asked only once a larger parcel has been defined on the basis of *present* use. We established that mere potential future joint use of a parcel is not enough to

show entitlement to severance damages. Our decision in *Ocean Shore, supra*, 32 Cal.2d 406, has subsequently been read as establishing precisely this rule. (See, e.g., *People* ex rel. *Dept. Public Works* v. *TeVelde* (1970) 13 Cal.App.3d 450, 456 [91 Cal.Rptr. 556]; Condemnation Practice in Cal. (Cont.Ed.Bar 1973) § 5.4, p. 98; *M & R Inv. Co., Inc.* v. *State* (1987) 103 Nev. 445 [744 P.2d 531, 535].) I would abide by this settled authority.

### III

Policy as well as precedent contravenes the majority position. The government owes a landowner just compensation when it takes private land, but when it does not take all of the landowner's land, but only part of it, the landowner is entitled to compensation for the land he or she still owns only if an injury to that land has actually occurred through the taking. Of course, when there is no taking, the government is not required to compensate a landowner, even though its actions affect the value of the land. (*Campbell* v. *United States* (1924) 266 U.S. 368, 371 [69 L.Ed. 328, 330, 45 S.Ct. 115]; *United States* v. *15.65 Acres of Land* (9th Cir. 1982) 689 F.2d 1329, 1331.)

The injury that we recognize as entitling the landowner to severance damages, as the majority concede, is an injury to the *integrity* of a parcel of land that is destroyed when the plot of land is torn in two. (*Sharp, supra*, 191 U.S. at p. 354 [48 L.Ed.2d at pp. 215-216].) When there is no current integrity in the parcel, there is no injury to the remainder when part of the parcel is condemned. The landowner whose unrealized plans to integrate the parcel are disturbed by the taking is in no different position from any adjacent landowner whose land is not subject to a taking but whose future plans to enlarge and develop his or her holding may be affected by the public project. Such an owner is not, of course, entitled to severance damages.

The majority instruct that we have dispensed with the requirement that there be unity of title in order to establish entitlement to severance damages. (Maj. opn., *ante*, at p. 746.) Contiguity, too, has faded as a requirement. (Maj. opn., *ante*, at p. 747.) Today the majority hold that current unity of use is not required, either.

Accordingly, the majority retain no method of distinguishing between partial takings that destroy integrity from partial takings that do not. Instead, they have transformed severance damages into a cash cow for landowners who happen to have a portion of their land taken by eminent domain. Not only are landowners to be compensated for the highest and best use of the land taken, but as to the remainder, landowners may make a claim for severance damages on the basis of nothing more than the dream of a

business plan, regardless of the use to which the land itself has been put or any actual damage to the owner's use and enjoyment of the land.

I am aware that the value of condemned property is measured by its market value, which may include the value of the land if it were assembled into a larger parcel. These defendants, in fact, received substantial compensation for the condemned land that included the value of the lost opportunity to assemble the taken land with the remainder and develop the whole. But there is justice in distinguishing between condemned property, the value of which is measured at its highest and best use, and property that remains undisturbed in the hands of the owner. Unlike condemned property, the future value of which is extinguished forever as far as the owner is concerned, the remainder still belongs to the owner. If he or she has not lost anything at the time of the taking, he or she has not lost anything at all, because the future, with its risks and opportunities, still belongs to the owner.

The law of eminent domain is intended to strike a balance between the interest of the public and that of the individual landowner. (See *People* ex rel. *Clancy* v. *Superior Court* (1985) 39 Cal.3d 740, 749 [218 Cal.Rptr. 24, 705 P.2d 347].) "The law of eminent domain is fashioned out of the conflict between the people's interest in public projects and the principle of indemnity to the landowner." (*U.S.* ex rel. *TVA* v. *Powelson* (1943) 319 U.S. 266, 280 [87 L.Ed. 1390, 1400, 63 S.Ct. 1047].) In deference to the claims of a private owner for indemnification for future losses, the majority opinion fails to recognize that the principles of just compensation must protect the public as well as the private landowner. (*Bauman* v. *Ross* (1897) 167 U.S. 548, 574 [42 L.Ed. 270, 283, 17 S.Ct. 966]; *City of Fresno* v. *Cloud* (1972) 26 Cal.App.3d 113, 123 [102 Cal.Rptr. 874].) The public interest in orderly development of infrastructure at a reasonable cost should not be held hostage to exorbitant claims of landowners who want guaranteed profit but none of the risk of private land ownership.

Finally, to ratify a claim for damages as to property still in the possession of defendants and available for the same use to which defendants have always put the land, simply because a public project and partial taking conceivably limit the future development potential of the land, seems inconsistent with the takings doctrine that has emerged over the last two decades in state and federal courts. An owner who still owns the land and may use it as he or she has always done, but who objects to a diminution of future development profits is in no different position than a landowner who complains that government land use regulation has impaired his or her future development profits in a parcel of land. Yet the state is entitled to restrict the

use of land in private hands; there is no right to compensation for diminished development potential: "the submission that [owners] may establish a 'taking' simply by showing that they have been denied the ability to exploit a property interest that they heretofore had believed was available for development is quite simply untenable." (*Penn. Central Transp. Co.* v. *New York City* (1978) 438 U.S. 104, 130 [57 L.Ed.2d 631, 652, 98 S.Ct. 2646]; see also *Lucas* v. *South Carolina Coastal Council* (1992) 505 U.S. ___ [120 L.Ed.2d 798, 812-813, 815-816, 820-821, 112 S.Ct. 2886, 2893, 2895, 2900] [restriction on development a taking because it denied the owner all economically beneficial or productive use of the land].)

The rule adopted by the majority today is inconsistent with the settled understanding that only a *vested* interest in development of land remaining in private ownership is compensable when it is disappointed by government action. (See, e.g., *Avco Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 796, 800-801 [132 Cal.Rptr. 386, 553 P.2d 546] [zoning changes binding on owner in absence of vested right to complete development]; *Long Beach Equities, Inc.* v. *County of Ventura* (1991) 231 Cal.App.3d 1016, 1036 [282 Cal.Rptr. 877] [denial of highest and best use not a taking even when regulation causes substantial diminution in value]; *Terminals Equipment Co., Inc.* v. *City and County of San Francisco* (1990) 221 Cal.App.3d 234, 244 [270 Cal.Rptr. 329] [landowner has no constitutional right to develop property for maximum economic profit].) The defendants, who have sought no building permits, undertaken no expenses, and in fact have not taken the first step towards developing their land, are now to be compensated for a purported lost development opportunity that is very far from being vested. In short, the taxpayers are being ordered to pay for a dream.

### IV

I would reverse the judgment of the Court of Appeal.

Kennard, J., and Arabian, J., concurred.

APPENDIX